THE STATE ex rel. KANSAS CITY, Appellant; ELLEN CUNNINGHAM et al., Interveners, v. PUBLIC SERVICE COMMISSION OF MISSOURI et al.

In Banc, November 20, 1923.

1. **PUBLIC SERVICE COMMISSION:** Validity of Order: Expediency and Necessity. Neither convenience, expediency nor necessity is proper matter for consideration in determining whether the Public Service Commission had statutory power to make an order per-

mitting a railroad company to construct its tracks along and across certain streets without having first obtained authority from the city so to do. None of these matters can be urged in support of such an order where the Commission's authority to make it is not expressly warranted by the statute or does not arise from such a clear implication flowing from the power conferred as is necessary to make it effective.

2. ———: Order Permitting Railroad Company to Construct Tracks in Streets. The Public Service Commission has no power, either expressed or implied, to authorize a railroad company to construct its tracks along and across the streets of a city. [JAMES T. BLAIR, DAVID E. BLAIR and RAGLAND, JJ., dissenting.]

3. ———: ———: Powers Are Regulatory. The power conferred by the statutes upon the Public Service Commission are purely regulatory, to be exercised in correcting an abuse of existing rights conferred upon a public utility, and not in the creation or the conferring of a new right. Its powers are to provide regulations in the interest of the public safety, and in the exercise thereof it may incidentally add facilities to a railroad company for the transaction of its business; but it has no power to grant permission to install crossings, but as to them its power is limited to prescribing the place and manner they are to be installed, operated and maintained. Section 50 of the Public Service Act (now Sec. 10459, R. S. 1919) declaring that no railroad corporation shall construct its tracks across a public street "without having first secured the permission" of the Public Service Commission, and that "the Commission shall have the right to refuse its permission or to grant it upon such terms and conditions as it may prescribe" did not vest the Commission with power to grant to a railroad company, which had not obtained the consent of the city, authority to lay its tracks in its streets, but is a part of the general regulatory powers granted to secure the public safety. [JAMES T. BLAIR, DAVID E. BLAIR and RAGLAND, JJ., dissenting.]

4. ———: ———: ———: Section 9850: Without Assent of City: Repeal by Implication. A grant of power is not in conflict with a subsequent statute regulating the exercise of the power. Section 9850, Revised Statutes 1919, was a grant of power to railroad companies to construct their tracks across streets upon obtaining the consent of the corporate authorities of the city, and the later Public Service Act, defining the powers of the Public Service Commission and clearly limiting them to acts of regulation, did not repeal said section, either directly or by implication, but was "intended to be supplemental to" such section. To the full extent of its defined

State ex rel. Kansas City v. Publ. Serv. Commission.

regulatory powers the Commission may act when, upon its own motion or the complaint of another or the application of a railroad company, its permission is sought to construct a railroad upon or across a city street; but a prerequisite to the exercise of the power is the assent of the corporate authorities of the city. The Legislature in enacting the Public Service Act did not intend by remote implication to strip cities of the power to control their thoroughfares.

*Held*, by JAMES T. BLAIR, J., dissenting, that the question whether the Public Service Act repeals Section 9850 is not in this case, but that the only question is whether the law makes the Commission's consent necessary to the railroad company's right to lay its tracks in a public street; that Section 50 of said act (now Sec. 10459, R. S. 1919) unquestionably requires the company to obtain the Commission's consent, and the Commission by an order expressly granted its consent; that if the city's power to prevent a railroad from crossing its streets without obtaining its consent remains, that power is in no way weakened or impaired by the provision of Section 10459 that permission to cross the street must also be obtained from the Commission; that it is immaterial whether the permission is first obtained from the city or the Commission if permission from both is required, and a holding that the order of the Commission granting its permission was void, on the ground that the railroad company had not previously obtained the consent of the city, cannot be upheld, without wholly disregarding the clear meaning of Section 10459.

*Held*, by DAVID E. BLAIR, J., dissenting, that Section 50 of the Public Service Act (now Sec. 10459, R. S. 1919) declaring that no railroad corporation shall construct its track across a public street "without having first secured the permission" of the Public Service Commission, and that "the Commission shall have the right to refuse its permission or to grant it upon such terms and conditions as it may prescribe" and that "the Commission shall have the exclusive power to determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, apportionment of expense, use and protection of each crossing . . . of a street by a railroad, . . . and to alter or abolish any such crossing," cannot be limited to a purpose of protecting the public from dangers incident to the use of grade crossings, but the words express exclusive power and grant complete finality to the decision of the Commission, and repealed by necessary implication so much of Section 9850 as required a railroad corporation to obtain "the assent of the corporate authorities of such city" before constructing its

tracks across its streets; and the order of the Commission granting to a railroad company permission to so lay its tracks cannot be held to have been void. Since the city if it retains such power may impose such conditions as it sees fit, it might prescribe terms conflicting with those prescribed by the Commission, and thus utterly destroy the words of the statute that the Commission may grant its permission "upon such terms and conditions as it may prescribe."

Appeal from Cole Circuit Court.—*Hon. J. G. Slate,* Judge.

REVERSED.

*John B. Pew* and *E. F. Halstead* for appellant.

(1) The provisions of Section 13, of Article XII of the Constitution of Missouri confers upon the railroad no right to cross public streets. People ex rel. McCullough v. Deutsche Evangelisch, 249 Ill. 132; Coosaw Mining Co. v. S. Carolina, 144 U. S. 562; Chicago & Alton Railroad v. Tranbarger, 238 U. S. 77; W. U. Tel. Co. v. Richmond, 224 U. S. 169; Pittsburgh v. Pittsburgh Railroad, 205 Pa. 13. (2) In the absence of any repealing statute the railroad company has no right to construct its tracks across the streets of Kansas City without the assent of the corporate authorities of the city. Sec. 9850, R. S. 1919; Lockwood v. Ry. Co., 122 Mo. 86; State ex rel. v. Ry. Co., 86 Mo. 288. (3) The granting of the right to the Railroad Company to cross the street in question is not an exercise of the police power, and does not fall within the purview of the Public Service Commission. Public Service Commission Act (Title), Laws 1913, p. 556; State ex rel. v. Roach, 267 Mo. 314; R. S. 1919, sec. 10462. (a) The Public Service Act does not repeal any other statute by implication; this, by virtue of Section 139 (Sec. 10550, R. S. 1919), under which there can be no repeal of any other statute by implication. In order to effect a repeal there must be such a direct con-

flict that both statutes cannot stand. McGrew v. Railroad, 230 Mo. 539; 4 Words and Phrases (2 Ser.) p. 797; In re Mfgs. Ry. Co., 1 Mo. P. S. C. 114; Ex parte Yerger, 75 U. S. (8 Wall.) 105. (b) Even in the absence of the provisions of Section 139, Public Service Act, Sec. 10550, R. S. 1919, it is the well established and universally recognized rule that in order to repeal a statute by implication there must be such a positive repugnancy between the provisions of the new law and the old that they cannot stand together or be consistently reconciled. There should be a manifest and total repugnancy in the provisions of the new law to lead to the conclusion that the latter law abrogated or was designed to abrogate the former. State ex rel. McGuire v. Draper, 47 Mo. 33; Pac. Railroad Co. v. Cass Co., 53 Mo. 28; McVey v. McVey, 51 Mo. 420; State ex rel. Folk v. Spencer, 164 Mo. 54; State ex rel. v. Patterson, 207 Mo. 145. (c) The claim cannot be made that Section 50 of the Public Service Act (Sec. 10459, R. S. 1919) covers the whole subject of the crossings of streets by railroads, thereby repealing Sec. 9850, R. S. 1919. Par. 3, sec. 53, Public Service Comm. Act (Par. 3, sec. 10462, R. S. 1919); State ex rel. v. Walbridge, 119 Mo. 389; Manker v. Faulhaver, 94 Mo. 441; Wood Co. v. Lackawana Coal Co., 93 U. S. 624; Frost v. Wenie, 157 U. S. 58; U. S. v. Tynen, 11 Wall. 92; Henderson v. Tobacco Co., 11 Wall. 652. (d) The arrangement whereby the State has provided that the city shall have exclusive control of its streets and that no railroad be built across its streets without permission of the city, and further that in the crossing of such streets the railroad shall not adopt a particularly dangerous mode of crossing (grade crossing) without first securing permission of the Public Service Commission, creates no conflict, and the vesting of these respective powers in two separate state agencies is proper and harmonious and has received the approval of this court. St. Louis v. Pub. Serv. Comm., 276 Mo. 509; State ex rel. U. Rys. Co. v. Pub. Serv. Comm., 270 Mo. 429; Kansas City v. Pub. Serv.

Comm., 276 Mo. 554; Holland Railroad Co. v. St. Louis, 221 S. W. 54; Pub. Serv. Comm. Act, secs. 53, 72, 96; Denver & Rio Grande Ry. Co. v. Pub. Utilities Comm., 172 Pac. 479. (4) Sec. 10458, R. S. 1919, does not confer any authority upon the Public Service Commission to authorize the crossing in question. State ex rel. U. Rys. Co. v. Pub. Serv. Comm., 270 Mo. 442; Sec. 20, Art. XII, Mo. Constitution. (5) Sec. 9850, R. S. 1919, requiring the assent of the city for the construction of a railroad across a street, is not repealed by Sec. 10459, R. S. 1919. St. Louis v. Pub. Serv. Comm., 276 Mo. 509; Kansas City v. Pub. Serv. Comm., 276 Mo. 539; Holland Realty Co. v. St. Louis, 282 Mo. 190; State ex rel. v. Roach, 267 Mo. 300. (6) The Public Service Commission is an administrative body and without legislative authority. It must therefore follow that Section 10459, in so far as it attempts to clothe the Commission with arbitrary power, and in so far as the act fails to provide a fixed rule of action for the guidance of the Commission, is invalid and could, in no event, have the effect of repealing Sec. 9850, R. S. 1919. Mo. So. Ry. Co. v. Pub. Serv. Comm., 279 Mo. 484; Merchants' Exchange v. Knott, 212 Mo. 616; Yick Wo v. Hopkins, 118 U. S. 372; Lockes Appeal, 78 Pa. St. 491; Nalley v. Home Ins. Co., 250 Mo. 452; Dowling v. Ins. Co., 92 Wis. 73; Central Ga. Ry. Co. v. Railroad Comm., 161 Fed. 925; St. Louis v. Allen, 275 Mo. 501; Wichita R. & L. Co. v. Pub. Utilities Comm., 43 Sup. Ct. Rep. 51.

*R. Perry Spencer* and *James D. Lindsay* for respondent, Public Service Commission.

(1) Subject to constitutional limitations, the State has absolute control of its public streets and highways, including those of its municipal and *quasi*-municipal corporations. 13 R. C. L. sec. 143, p. 163. And since the State has sole control of its streets and highways, it may authorize their use for the purposes of travel and commerce without the consent of the municipalities through which they pass. 13 R. C. L. sec. 150, p. 172. The con-

stitutional limitation Section 20, Article XII, is applicable to street railroads only. (2) Any city having a population of more than one hundred thousand inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of the State, but such charter shall always be in harmony with and subject to the Constitution and laws of the State. Sec. 16, Art. IX, Mo. Constitution. (3) Railways heretofore constructed, or that may hereafter be constructed in this State, are hereby declared public highways, and railroad companies common carriers. Sec. 14, Art. XII, Mo. Constitution. (4) Any railroad corporation or association, organized for the purpose, shall have the right to construct and operate a railroad between any points within this State, and to connect at the state line with railroads of other states. Sec. 13, Art. XII, Mo. Constitution. (5) The police power of the State, which can never be abridged, applies with equal and paramount force to the municipal corporation or *quasi*-municipal corporation, and the railroad corporation, in the relation of those corporations to a common subject—the intersection or crossing of a public highway by a railroad. Sec. 5, Art. XII, Mo. Constitution; Sec. 50, Public Service Act (Sec. 10459, R. S. 1919); State ex rel. Wabash Ry. Co. v. Commission, 271 Mo. 270; State ex rel. St. Joseph Ry. & Light Co. v. Commission, 272 Mo. 645. (6) The Public Service Commission has been given specific authority to require or to authorize any railroad company to provide "additional tracks, switches, terminals or terminal facilities—in, or in connection with the transportation of passengers or property which ought reasonably to be provided—to promote the security or convenience of the public—or, in order to secure adequate service or facilities for the transportation of persons or property." Section 49, Public Service Act (Sec. 10458, R. S. 1919). (7) The power to require the ultimate thing—the extension or additions of facilities—includes the power to require or to authorize to be done all the intermediate things essential or reasonably necessary or incidental to the accomplishment of

the ultimate thing. State ex rel. U. Rys. Co. v. Commission, 270 Mo. 429; Pub. Utilities Comm. v. Smith, 131 N. E. 371; C., B. & Q. R. R. Co. v. Cavanaugh, 278 Ill. 609; Mo. etc. Railway v. State, 29 Okla. 640; Railroad Comm. v. Alabama Railway, 185 Ala. 354, L. R. A. (N. S.) 1915 D, 98; Wisconsin Ry. v. Jacobson, 179 U. S. 302; Atlantic Coast Line v. N. C. Comm., 206 U. S. 27; Minneapolis Ry. v. Minnesota, 186 U. S. 260; Mayor v. Norwich & Worcester Railroad Co., 109 Mass. 103; Grand Trunk Railway v. Michigan Ry. Comm., 231 U. S. 458. (8) Prior to the enactment of the Public Service Act the respective rights of railroad companies, on the one hand, and of corporate authorities of cities and of county courts of counties, on the other, upon the subject of the crossing by a railroad of a street or highway, were set forth in a statute, enacted many years ago, and carried forward as Sec. 9850, R. S. 1919. (9) The provisions of Sections 49 and 50, of the Public Service Commission Law (Secs. 10458, 10459, R. S. 1919), are a limitation, alike, upon the powers of railroad companies, city authorities and county courts, as expressed in Section 9850, or in any provision of the charter of Kansas City—a withdrawal of those powers, and a substitution of a new, complete and exclusive power, and method of proceeding, upon that particular subject, whereby, in that particular matter, the railroad company, and the municipality, are equally made subject to the exercise of a single power for every purpose, to accomplish the desired end. State ex rel. Railways v. Commission, 271 Mo. 270; State ex rel. Ry. & Light Co. v. Commission, 272 Mo. 645; authorities under Point 7. (10) The provisions of Section 9850, an old statute, were and are repealed by the provision of the Public Service Act, and particularly by Sections 49 and 50 of the latter law (Secs. 10458, 10459, R. S. 1919), because, the latter law is inconsistent with and repugnant to the former; furnishes a new and complete scheme; occupies all the space of the former law, and more; assumes complete and exclusive control, after its own method, of the whole subject-matter, and of the parties dealt with,

in the old law.  Section 139, Public Service Act (Sec. 10550, R. S. 1919) ; State ex rel. Mo. Pac. Ry. v. Commission, 275 Mo. 60.  (11) In the instant case, and in every like case, it is the Public Service Commission and not the city or the railroad company, which determines, and must determine the existence of the element of public necessity and convenience for the making of the crossing—an incident to the necessary making of the extension of facilities—and thereby it gives "consent" for the city, and for the railroad company as well.  State ex rel. Mo. Pac. Ry. v. Commission, 275 Mo. 65.  (12) Power to require and compel a thing to be done, implies and includes, axiomatically and inevitably, power to authorize that thing to be done.

*Carl S. Hoffman, J. W. Jamison, A. L. Cooper* and *E. A. Neel* for respondents, Railway Company.

(1)  The additional tracks, track connections and facilities authorized in the commission's order are imperatively demanded as a public necessity, and the authority granted is fortified both by organic and statute law. The Commission's order authorizes the closing of a gap in connecting and extending respondents' rails from the terminals in Kansas City to and across the state line to the switch yards and terminals located at Rosedale in Kansas.  Section 13, Article XII, Constitution of Missouri, grants to railroads the right to construct between points in this State and connect at the state line with railroads in adjoining states.  The grant of power in said Section 13 is subject to reasonable regulations under the police power as reserved in Section 5 of the same article. "The Constitution contemplates that all railroads operating in this State will engage in interstate commerce" (Sec. 13, Art. XII, Mo. Constitution).  State v. Railroad, 212 Mo. 677.  (2)  The Railway Company was incorporated as a railroad corporation under the laws of the State of Kansas.  Through its ownership and operation of numerous lines of railroad located in this State, and ex-

tending into and through the State of Kansas and Oklahoma, it has acquired in Missouri the status of a domestic railroad corporation. Secs. 9963, 9881, 9850, 9878, 9879, 9911, 9912, 9926, R. S. 1919; State v. Railroad, 212 Mo. 677. The provisions of the Constitution and statutes automatically became a part of the charter of the railway company. Fletcher Cyclopedia Corp. sec. 226; Clark on Corp. (2 Ed.) p. 116; Arkansas Stave Co. v. State, 125 S. W. 1001; Julian v. Kansas City Star Co., 209 Mo. 67; Orpheum Theater Co. v. Brokerage Co., 197 Mo. App. 663. ''The charter of a corporation read in the light of any general laws which are applicable, is the measure of its power.'' Central Trans. Co. v. Pullman Car Co., 139 U. S. 48. (3) Appellant is in error in assuming there was a legislative grant that would permit or authorize Kansas City to deprive railroads of constitutionally vested charter rights. The general grant in Section 13 of Article XII of the Constitution authorizing railroad corporations to cross roads and streets and connect at the state line with railroads of other states was subject to reasonable regulation as provided in Section 5 of the same article, which provides: ''The exercise of police power of the State shall never be abridged nor so constructed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals or the general well-being of the State.'' Sec. 9850, R. S. 1919, did not have the effect of vesting autocratic power in local officers, but merely lodged with them, until such time as it might be withdrawn, the police power of reasonable regulation. Peterson v. Railroad, 265 Mo. 462; Flood v. Leahy, 183 Mass. 232. The whole power of regulation of crossing of streets by railroads was withdrawn from local authorities and given into the custody of the Public Service Commission by Section 50 of Public Service Act (Sec. 10459, R. S. 1919). By implication it was withdrawn and vested in the Public Service Commission by Section 49 (Sec. 10458, R. S. 1919) if and when the exercise of it became necessary in the extension of railroad terminals and facilities to accommodate public

demand and meet a public necessity. (a) Public demand and a public necessity sustain the Commission's order. Sec. 10458, R. S. 1919; State ex rel. v. Pub. Serv. Comm., 270 Mo. 442; State ex rel. Mo. Pac. v. Pub. Serv. Comm., 275 Mo. 60; State ex rel. v. Pub. Serv. Comm., 259 Mo. 704; St. Louis v. Pub. Serv. Comm., 276 Mo. 509; State ex rel. St. Joe Ry. & I. Co. v. Comm., 272 Mo. 645; City of Kirksville v. Hines, 225 S. W. 950. (b) Sec. 50, Pub. Serv. Act (Sec. 10459, R. S. 1919) gives to the Commission exclusive power over the whole subject of the crossing of a street or highway by a railroad or of the crossing of a railroad by a street or highway, whether they be by subway, at grade or overhead. State ex rel. Railways v. Commission, 271 Mo. 270; State ex rel. Ry. & Light Co. v. Commission, 272 Mo. 645; Kansas City v. Mo. Pac. Ry. Co., 229 S. W. 771; City of Kirksville v. Hines, 225 S. W. 950. (4) Appellant's construction of Sec. 9850, R. S. 1919, would make the statute void as being in conflict with Sec. 13, Art. XII, of the Constitution, and with Sec. 9963, R. S. 1919, providing that railroads shall have the right to construct and operate between any points within the State and to connect at the state line with railroads of other states. Peterson v. Railroad, 265 Mo. 462; Atl. & Pac. Ry. Co. v. St. Louis, 66 Mo. 256; Police Jury v. Tremont & Gulf Ry. Co., 136 La. 787; Mayor v. Canton Warehouse Co., 65 L. R. A. 561; 3 Elliott on Railroads (2 Ed.) secs. 1076, 1099; Hannibal v. Railroad Co , 49 Mo. 481.

WALKER, J.—This is an appeal from a judgment of the Circuit Court of Cole County affirming an order of the Public Service Commission in the case of Kansas City, appellant, and Ellen Cunningham et al., interveners, against the Public Service Commission et al., respondents.

The order of the Public Service Commission granted permission to the railway company to construct its tracks along and across certain streets in said city without having obtained authority from the latter so to do. The interest of the interveners arises from their ownership of

lots adjacent to the streets sought to be appropriated as rights-of-way by the Missouri, Kansas & Texas Railway company, one of the respondents.

I.    Neither convenience, expediency nor necessity are proper matters for consideration in the determination of the issue here submitted.   Either or all of these can only be urged in support of an act of the Commission clearly authorized by the statute.  We say clearly authorized because the statutory origin and administrative character of the Commission render it necessary that its power be warranted by the letter of the law or such a clear implication flowing therefrom as is necessary to render the power conferred effective.   It is conceded that express power to make the order in question is only to be found, if it there exists, in Sections 49 and 50 of the Public Service Statute (now Secs. 10458 and 10459, R. S. 1919).   It appears, however, that there is an earlier general statute (Sec. 9850, R. S. 1919) limiting the power of railroad companies to use or occupy the streets of a city which is contended by the respondent to be in conflict with the sections of the Commission Act above cited.   As a prerequisite, therefore, to the exercise of the power claimed to be conferred on the Commission by these sections it must be held that they repeal Section 9850.   An analysis of these statutes is necessary to the determination of this question.

Section 10458 is as follows:

"If, in the judgment of the Commission, additional tracks, switches, terminals or terminal facilities, stations, motive power, or any other property, construction, apparatus, equipment, facilities or device for use by any common carrier, railroad corporation or street railroad corporation in or in connection with the transportation of passengers or property ought reasonably to be provided, . . . in order to promote the security or convenience of the public or employees, or in order to secure adequate service or facilities for the transportation of passengers or property, the commission shall, after a hearing, either

on its own motion or after complaint, make and serve an order directing such repairs, improvements, changes or additions to be made within a reasonable time and in a manner to be specified therein, and every common carrier, railroad corporation and street railroad corporation is hereby required to make all repairs, improvements, changes and additions required of it by any order of the commission served upon it. . . ."

Section 10459 is as follows:

"1. . . . Nor shall the track of any railroad corporation be constructed across a public road, highway or street at grade . . . without having first secured the permission of the commission. . . . The commission shall have the right to refuse its permission or to grant it upon such terms and conditions as it may prescribe.

"2. The commission shall have the exclusive power to determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, apportionment of expenses, use and protection of each crossing of . . . a public road or highway by a railroad or street railroad, and of a street by a road or *vice versa,* so far as applicable, and to alter or abolish any such crossing. . . ."

And Section 9850 is as follows:

"Every corporation formed under this article shall, in addition to the powers hereinbefore conferred, have power: . . . third, to lay out its road, . . . and to construct the same . . . fourth, to construct its road across . . . any street. . . . Nothing herein contained shall be construed to authorize . . . the construction of any railroad not already located . . . across any street in a city . . . without the assent of the corporate authorities of said city. . . ."

II. The power conferred on the Commission by these sections is purely regulatory. In fact, the entire power of the Commission may be thus characterized. The dominating purpose in the creation of the Public Service

Commission was the promotion of the public welfare. This is sought to be effected by regulation which seeks to correct the abuse of any property right of a public utility and not its use. The exercise of the latter would involve a property right in the utility which the Commission does not possess. This distinction while usually made in the adjudicated cases in considering the property rights of public utilities is nevertheless applicable in defining the limits of the power of the Commission as affecting the general public as in the case at bar. "'It must be remembered", as Mr. Justice BREWER said in effect in Interstate Commerce Commission v. Chicago Great Western Railway Co., 209 U. S. 108, "that while from the public character of the work in which railroad companies are engaged, the public has the power to prescribe rules for securing faithful and efficient service, . . . yet in no proper sense is the public a general manager." To a like effect is Chicago, Minneapolis & St. Paul v. Wisconsin, 238 U. S. 491.

These general observations as to the character of the power with which the Commission is invested finds its confirmation in the sections under review. Section 10458 has to do with the manner in which the entire superstructure of railroad companies is to be used; and the power of the Commission in regard thereto is limited to the regulation of repairs, improvements, changes and additions. Each of these terms is clearly indicative of a legislative purpose to confer power upon the Commission to improve conditions then existing, but not to create new ones. The power thus conferred is mandatory (State ex rel. U. Rys. v. Public Service Comm., 270 Mo. 429), and whatever mandates are issued thereunder must emanate from the Commission "whether they be on its own motion or on complaint." Under the authority of neither was the proceeding at bar commenced, and if authority therefore be based upon this section alone its application in either influencing or determining the matter at issue may be subject to serious question.

However, it is provided in Section 10459 that application by a railroad company for permission to construct its track across a road, highway or street at grade shall be made to the Commission whose permission shall be a condition precedent to the exercise of the right. The permission thus required by the terms of the section is limited to grade crossings. That limitation not being necessary to the determination of the question here requiring solution, is not ruled upon, especially in view of the fact that the Commission has ruled (Macon v. C. B. & Q. Rd. Co., 1 P. S. C. Rep. l. c. 647) that its authority over crossings is general and is not limited to grade whether existing before or constructed after the law went into effect. It will be time enough for a consideration of that ruling when the limit of the Commission's power in that regard is at issue.

To anyone familiar with current history concerning the operation of railroads and the increased dangers occasioned by the manner of constructing and maintaining crossings, the reason for their special designation in a regulatory statute and the emphasizing of the power of the Commission in reference thereto, was primarily in the interest of public safety, although incidentally it may add facilities to the railroad company in the transaction of its business. In short, it was the public welfare and not merely commercial convenience that the Legislature had in view. It will be noted that the exclusive power conferred by the second subdivision of Section 10459 on the Commission, is not in reference to the granting of the permission to install crossings, but to the place and manner where they are to be installed, operated and maintained. Whether this power therefore is general or limited there is nothing in the section or the entire act, when construed with reference to its evident meaning and purpose, which will lend substantial aid to the conclusion that the power of the Commission in regard thereto was intended to be exclusive.

However, we are particularly concerned here with the effect of the enactment of Section 10459 upon Section

301 Mo.—13

Repeal.    9850.  Generally the entire Public Service Act construed in harmony with its letter and subject-matter offers no substantial support to the conclusion that it was intended to repeal any existing statute which under a reasonable interpretation of same could be held not to be in conflict therewith.  The purpose of the Public Service Act and more especially of Section 10459, as we have stated with perhaps prolix iteration, was to so regulate the powers of railroad companies as to require that they comply with the rights granted to them and in complying that they do not abuse them.

The purpose of Section 9850 was to grant the charter powers therein enumerated to railroad companies. The powers thus granted with the limitations therein prescribed are in no wise in conflict with the Public Service Act.  There is no rule of construction that we are aware of that will authorize the holding that a grant of power is in conflict with a subsequent statute regulating the exercise of such power.  The Public Service Act itself clearly defines its own limits as to other statutes.  After providing in stereotype terms as to the repeal of all laws, etc., in conflict with same, this repealing clause (Section 10550) is modified by the following: ''The provisions of this law are not intended to repeal any law now in force, unless in direct conflict therewith, but is intended to be supplemental to such laws.''  Section 9850 is neither in direct or implied conflict with the Public Service Act.  On the contrary the latter may be held to be supplemental to the former.  The lending of the police power of the State by the Legislature to the Commission suffers no curtailment by this ruling.  The Commission therefore may act to the full limit of its defined powers when upon its own motion or the complaint of another, or the application of a railroad company, its permission is sought to construct a railroad upon or across any city street or county road. A prerequisite to the exercise of that right is the assent of the corporate authorities of the city or the county court of the county.  A railroad company derives its charter powers from the State with the express limitation in

regard to the crossing of roads and streets prescribed in Section 9850. An attempt to ignore this limitation under the plea that the Legislature in enacting the Public Service Act stripped the municipalities named by remote implication of the power to control their thoroughfares does not accord with reason and is a violation by the company of its charter rights.

The construction we have given the foregoing sections is in harmony with the Constitution and the statutes authorizing the creation of municipalities. Section 9850 in this regard does no more than to recognize a well defined power of municipalities; and it deprives the Public Service Commission of no power necessary to effect the purpose of its creation. Not only in Section 9850, but in the legislative grant of powers to municipalities, whether in the form of a general law or a particular one incorporated in a charter, is this power expressly given to them. This power in its fullness is given to the Common Council of Kansas City. [Charter 1908, p. 133, sec. 11.].

Let it be granted, therefore, that the manner in which a street or road crossing is to be installed, used and maintained has been delegated to the Public Service Commission, the right in the first instance to grant or refuse this privilege has been reserved to the municipal authorities. That this division of the police power has been wisely determined no one familiar with the organization of cities and counties and the consequent importance, if not the necessity, of investing them with the right to control their highways, will deny.

In Holland Realty & Power Co. v. St. Louis, 282 Mo. l. c. 190, this court held that: "Had the Legislature thought the wiser course would be to reserve the power to grant directly to such corporations the franchise to use streets, and restrict municipal control over the companies to an exercise of the police power, it could have done so—can yet at any time. But, instead, the power to grant or refuse, as well as to regulate the use of the streets, was delegated to the municipal authorities."

Other reasons than those adduced in construing the sections under review sustain the conclusion we have reached. Their discussion therefore is not deemed necessary. Municipalities have always possessed and under our system of laws still retain power to control their streets and roads. The primary right to exercise this power was not abrogated by the enactment of the Public Service Act.

We hold therefore that the assent of Kansas City is a legal prerequisite to the construction upon the streets named, of the tracks of the railway company; and whatever power, clearly defined by law, exists in the Public Service Commission in regard thereto is subordinate to that right.

The judgment of the circuit court is therefore reversed. *Woodson, C. J.,* and *Graves* and *White, JJ.,* concur; *James T. Blair* and *David E. Blair, JJ.,* dissent in separate opinions filed; *Ragland, J.,* dissents.


JAMES T. BLAIR, J. (dissenting).—This dissent is founded upon the view that the majority opinion makes no ruling which warrants the judgment it orders. In that opinion it is held that Section 9850, Revised Statutes 1919, is not repealed by Sections 10458 and 10459, Revised Statutes 1919. This is the basis of the conclusion it reaches. Section 9850 is treated as if it granted cities the power effectually to deny railroads the right to cross their streets. In fact, it merely provides that its provisions shall not destroy that power. It does not confer the power. It does not destroy it. Appellant's power to prevent a crossing is found elsewhere. The competency of the Legislature to abolish that power is not questioned (Sec. 16, Art. IX, Constitution of Missouri; State ex rel. v. Jost, 265 Mo. l. c. 71, and cases cited,) but the ruling is simply that the Public Service Commission Act does not repeal Section 9850, "and therefore" the judgment is reversed. Other things are said in the opinion. Certain assumptions are made in it; but that is the single ruling. The decision is that

the judgment must be reversed. This contains the necessary implication that the order of the Commission is either unreasonable or unlawful (Secs. 10522, 10534 and 10535), since these are the only issues which can be tried on *certiorari* to the Commission in the circuit court, as the cited sections show. It is not intimated in the opinion that the order, if lawful, if within the Commission's power, is unreasonable. In fact, that question is expressly laid to one side. It is, therefore, necessarily implied in the order of reversal that the order is unlawful, is beyond the power of the Commission. Now, this is an appeal from a judgment of the circuit court affirming an order of the Commission. That order reads as follows:

"This case being at issue upon complaint and answer on file, and having been duly heard and submitted by the parties and full investigation of matters and things involved having been had, and the Commission having on the date hereof made and filed its report containing its finding of fact and conclusions thereon, which said report is hereby referred to and made a part hereof.

"Now, upon the evidence in these cases, and after due deliberation, it is

"Ordered. 1. That the Missouri, Kansas & Texas Railway Company and Charles E. Schaff, receiver, be and they are hereby authorized to construct standard-gauge railroad tracks, at grade, across Liberty Street, Seventeenth Street and Sixteenth Street, Kansas City, Missouri, at the points designated and shown on complainant's Exhibit 'N,' filed herein.

"Ordered. 2. That these crossings be constructed and maintained by complaints, at their own expense.

"Ordered. 3. That this order take effect on June 4, 1921; and that the secretary of the Commission forthwith serve a certified copy of the report and order herein on the interested parties; and that the Missouri, Kansas & Texas Railway Company and Charles E. Schaff, receiver, notify the Commission on or before the effective date of this order as required by Section 25 of the Public

Service Commission Law, whether the terms of such order are accepted and will be obeyed.''

In the ''report'' to which the order refers and which is made a part of the order by reference (11 Mo. P. S. C. Rep. l. c. 262, 263) is found the following:

''Looking to the spirit and intent of the whole act creating this Commission, and to Section 50 in particular, we entertain no doubt as to the Commission having jurisdiction of the subject-matter involved in the instant case.

''As to whether or not our jurisdiction is exclusive, or of a concurrent nature with Kansas City, we express no opinion believing, as heretofore indicated, that decision thereof falls wholly within the functions of the courts.''

The order of the Commission is not based upon any idea that it has power which excludes a city's right to prevent a railroad from crossing a city street. The order of the Commission and the report incorporated therein put that beyond doubt. It is not denied in the majority opinion that the Legislature has power to require that a railroad must secure permission from the Commission before it may cross a city street, and it is not and cannot be denied that Section 10459 requires that very thing. If this provision is valid, and its validity is not questioned by the majority, and if, in addition, other provisions abolish the city's power to deny the right to cross a street, the judgment ought to be affirmed; not because the Commission has exclusive authority, but simply because it has authority—because its permission is essential. The question in this case is whether the law makes the Commission's consent necessary, and not whether the consent of some other authority also must be secured. If the city's power to prevent a railroad from crossing one of its streets remains, it is in no way weakened or impaired by reason of the provision in Section 10459 that permission to cross must also be obtained from the Public Service Commission. It does not follow from a hoding that the Legislature did not abolish the city's power, that it did not succeed in making the Com-

mission's permission a prerequisite to ·crossing a city street. In express language the statute requires the road· to have the Commission's permission, no matter what other authority is required to consent. The most that can be said of the ruling is that it would require the road to have permission from both the city *and* the Commission; either may deny the road the right to cross; both must concur in granting the right to cross. If this is true, and true it must be if the principle announced in the majority opinion is sound, and if the Legislature may invest the Commission with the power with which it clearly has attempted to invest it, then there is no reason for reversing this judgment on the ground given in the majority opinion. If the power is concurrent, it cannot be successfully argued that permission must first be secured from the city rather than from the Commission, nor from the Commission rather than from the city. The order of business is not important. If permission from both is secured, that will authorize the road to cross the street even though one grants permission a little earlier than the other. If could not be required that permission be secured from both at the same instant. The present situation is that the court is holding, without saying so in so many words, that the fact that the Legislature did not abolish the city's power, prevented it, in some way, from conferring a concurrent power upon the Commission; or, that the fact that the consent of both is required and that one has consented in advance of the other renders that consent void and justifies the reversal of the judgment affirming the permissive order. It cannot be that the failure to repeal Section 9850 and the like invalidated Section 10459. Nor does the failure of the city to consent devest the Commission of its power to give consent, for whatever it is worth, as the statute authorizes it to do or refuse to do, as it may be advised.

The question of the city's power in the premises is not in the case, and cannot be injected by arguments of counsel. It does not arise on the record. No decision of the question of the city's power can support a judgment of reversal in this case. If the city does not consent and

its consent is necessary to authorize the road to build across the street, then a way can be found to prevent the construction not consented to by the city, when that construction is begun. Whether the consent of the city is essential may be litigated then. It ought not to be determined in a case which involves a merely permissive order which, if the statute is valid, the Commission has the power to make and must make before the road can build across the street, whether or not the city can refuse to permit the crossing.

It is argued by respondent that a designated constitutional provision authorizes the road to build across city streets without the consent of either the city or the Commission. This is denied by appellant. Respondent seeks to uphold the judgment which affirms the order of the Commission. The constitutional provision mentioned cannot aid respondent in its effort to sustain the order. The order is based upon a statute which is invalid if this contention of respondent is sound. Unless the statute is invalid the order is good. If it is invalid the order is without authority, and this judgment should be reversed. The respondent cannot set up the constitutional provision except as against the statutes which requires it to secure permission from certain authorities and these will include the Commission whose order it sought, secured and seeks in this proceeding to sustain. That is the issue here. The city cannot set up the constitutional provision to invalidate the statute upon which the order is based, without arguing for a principle which destroys the statute upon which it founds its claim that it may deny the road the right to cross the street. This question, it is not surprising to discover, was not raised before the Commission or in the circuit court. It is not for determination here.

The judgment should be affirmed without attempting to decide the question whether the city may deny the company the right to cross the street despite the permission already secured from the Commission. That question can be decided when some record in this court presents it.

Vol. 301]        OCTOBER TERM, 1923.        201

State ex rel. Kansas City v. Publ. Serv. Commission.

DAVID E. BLAIR, J. (dissenting).—I am unable to concur in the opinion of my learned brother WALKER, and feel that I should state the reasons compelling my dissent. Those reasons have already been stated in an opinion previously written by me, and I still adhere to the views therein expressed. I now use so much thereof as is necessary to understand my dissent.

The sole question for our consideration is whether the assent of the city is a prerequisite to the right of the railroad to build its tracks across public streets of said city. Appellants rely upon Section 9850, Revised Statutes 1919, being part of Chapter 90, Article II, in relation to railroad companies. So much of said section as is of interest here reads as follows:

"Every corporation formed under this article shall, in addition to the powers hereinbefore conferred, have power: . . . third, to lay out its road, . . . and to construct the same; . . . fourth, to construct its road across . . . any street, . . . Nothing herein contained shall be construed to authorize . . . the construction of any railroad not already located . . . across any street in a city . . . without the assent of the corporate authorities of said city . . ."

If this section is now in full force and effect, it is apparent that the railroad cannot construct its tracks across Sixteenth, Seventeenth and Liberty streets without the assent of the corporate authorities of Kansas City and the order of the Commission cannot be sustained. The cases of Lockwood v. Railroad Co., 122 Mo. 86, and State ex rel. v. Railway Co., 86 Mo. 288, cited and relied upon by appellants, give us no aid, for the reason they were decided long before the enactment of the Public Service Commission Act. Respondents contend that in so far as said Section 9850 requires the assent of the city, it is in conflict with Sections 10458 and 10459, Revised Statutes 1919 (Secs. 49 and 50, P. S. C. Act), and therefore that said Section 9850 in that respect has been repealed by implication.

Section 10458 reads as follows:

"If, in the judgment of the commission, additional tracks, switches, terminals or terminal facilities, stations, motive power, or any other property, construction, apparatus, equipment, facilities or device for use by any common carrier, railroad corporation or street railroad corporation in or in connection with the transportation of passengers or property ought reasonably to be provided, . . . in order to promote the security or convenience of the public or employees, or in order to secure adequate service or facilities for the transportation of passengers or property, the commission shall, after a hearing, either on its own motion or after complaint, make and serve an order directing such repairs, improvements, changes or additions to be made within a reasonable time and in a manner to be specified therein, and every common carrier, railroad corporation and street railroad corporation is hereby required to make all repairs, improvements, changes and additions required of it by any order of the commission served upon it. . . ."

The applicable portion of Section 10459 reads as follows:

"1. . . . Nor shall the track of any railroad corporation be constructed across a public road, highway or street at grade . . . without having first secured the permission of the commission. . . . The commission shall have the right to refuse its permission or to grant it upon such terms and conditions as it may prescribe.

"2. The commission shall have the exclusive power to determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, apportionment of expenses, use and protection of each crossing of . . . a public road or highway by a railroad or street railroad or of a street by a railroad or *vice versa,* so far applicable, and to alter or abolish any such crossing. . . ."

Said section then proceeds to provide for the separation of grades, etc.

Appellants contend that said Section 9850 is in full force and is unaffected by the enactment of said Sections 10458 and 10459, and that the assent of the municipal authorities before the railroad can extend its tracks across the streets of the city is still required. Section 10550, Revised Statutes 1919, expressly repeals Sections 9568, 9569 and 9570, Revised Statutes 1909, and all other laws and parts of laws in conflict with the Public Service Commission Act and concludes as follows:

"The provisions of this law are not intended to repeal any law now in force, unless in direct conflict therewith, but is intended to be supplemental to such laws."

Appellants lay great stress on the language quoted from Section 10550. However, such language is but a statement of the general rule governing repeals by implication. [36 Cyc. 1073; State ex rel. v. Wells, 210 Mo. 601, l. c. 620.] If Section 9850 is in conflict with Section 10459 then the latter, as a later expression of the legislative will, repealed said Section 9850 by implication.

It is apparent that under Section 10458 the Commission has full power to require the railroad and its receiver to furnish better and more adequate facilities. Such being the case, the Commission must of necessity have implied power to require said railroad to do whatever is necessary to comply with such order, even to the crossing of streets and highways. [C. B. & Q. Railroad v. Cavanaugh, 278 Ill. 609, l. c. 615; Railroad Co. v. N. C. Corporation Comm., 206 U. S. 1, l. c. 27.] It is of no importance that the railroad is willing to make the needed extension of facilities and itself seeks authority to do the things necessary to carry into effect the needed extension. Such willingness does not affect the powers of the Commission as defined in the statute. We must look to the provisions of Section 10459 in the light of the provisions of Section 10458 to determine the powers of the Commission in the premises.

There is a finality in the language of subdivision 1 of Section 10459 when read as a whole, which admits of no divided authority. If the last sentence of said sub-

division had not been added and the provisions of subdivision 2 had been omitted altogether, there might be some room for the contention made by appellants that the giving of the permission of the Commission to the construction of grade crossings is only required for the purpose of protecting the public from dangers incident to the use of grade crossings and not intended to take the place of the city's assent; but when it is provided that such permission may be granted upon such terms and conditions as the Commission may prescribe or may be refused altogether, complete finality in the decision of the Commission is fully expressed. This is emphasized in subdivision 2 by the provisions that the Commission shall have the exclusive power to determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, apportionment of expenses, use and protection of each crossing of a street by a railroad, and to alter and abolish any such crossing. These provisions refer to grade crossings only, and are followed by provisions applicable to separation of grades. The requirement of assent of the city under Section 9850 implies the right of the city to make its own terms for the giving of such assent. [St. Louis Ry. Co. v. Kirkwood, 159 Mo. 239, 1. c. 252, and cases cited.] Such assent of the city is not a mere "yes" or "no." It implies the right to fix the conditions of such assent. Section 10459 gives the Commission the exclusive power to fix the terms and conditions upon which a railroad shall cross a street, thus depriving the city of all the usual prerogatives attendant upon the giving of assent. The taking away from the city of the right to fix the terms and conditions of assent is inconsistent with the necessity for the city's assent.

Section 10459 gives the Commission the power to alter or altogether abolish grade crossings. The railroad might secure the assent of the city, followed by permission of the Commission, and then construct its crossing at grade, and immediately conditions might arise where the Commission might reasonably see fit to abolish

such crossing, and the fact that the city had given its assent and was willing for the crossing to remain, or even insisted upon it remaining, would present not the slightest legal objection to the action of the Commission in abolishing the crossing. The right to exercise the power to abolish such crossing is inconsistent with the necessity for the city's assent.

By subdivision 2 of Section 10459 the Commission has exclusive power to determine and prescribe not only the manner, but the particular point of crossing. The city might condition its assent upon the crossing being made at a particular point at which the Commission, in the exercise of its exclusive power, might not sanction the crossing to be made.

Under subdivision 2 of Section 10459 the Commission has the exclusive power to apportion the expense of installing and maintaining grade crossings. A portion of the expense may be taxed to the city. The city might condition its assent in such manner as to avoid payment of any portion of the expense where the Commission had ordered otherwise. Here again conflict appears.

To hold that the assent of the city and the permission of the Commission are both essential is to convict the Legislature of doing an unwise thing and creating conditions which lead to chaos. If the city's assent is necessary, it can be as arbitrary as it pleases in granting such assent. It can require that the railroad employ a watchman at the crossing as the condition of its assent, while the Commission might think gates necessary and condition its permission upon such requirement. The city might utterly refuse its assent to the crossing if the railroad was permitted to use an electric crossing bell, while the Commission might make the requirement that the crossing be authorized solely on condition that such electric crossing bell be installed. The railroad could not comply with both. The Legislature would thus be convicted of imposing upon the railroad a conflict of authority.

By Section 10459 the entire subject of railroad crossings is placed under the jurisdiction of the Commission.

The first subdivision deals with grade crossings; the second wth grade crossings and those not at grade. Appellants seem to contend that the permissive order of the Commission is required for grade crossings. The provisions that the Commission shall prescribe the terms upon which separation of grades shall be made and shall apportion the expense between the railroad or street railroad and the municipality, places complete control in the hands of the Commission over crossings not at grade. [State ex rel. Light & Power Co. v. Public Service Comm., 272 Mo. 645; State ex rel. M. K. & T. Ry. Co. v. Public Service Comm., 271 Mo. 270.]

At least in the particulars above pointed out there is serious and irreconcilable conflict between the two sections, and Section 9850 should be held to be repealed by implication in so far as the assent of the city is concerned. A reason for repealing said section suggests itself—a legislative reason, and one not the business of the courts. The assent of the city provided for in Section 9850 is an assent which might be capriciously given or withheld, while the order made by the Commission is reviewable in the courts, and if its order granting or refusing permission is unreasonable such order can and will be set aside on *certiorari*.

There is nothing in State ex rel. United Railways Co. v. Public Service Commission, 270 Mo. 429, which militates against my conclusion that the Public Service Commission has exclusive power to grant permission for the crossing of the city streets by the tracks of a steam railroad. There this court was dealing with Section 20, Article XII, of the Constitution, which forbids the General Assembly granting the right to construct and operate a street railroad within any city or on any public highway without first acquiring the consent of the local authorities having control of the street or highway proposed to be occupied by said street railroad. That section applies to street railroads only and with respect to the occupancy of streets and the use thereof as part of a street railroad system. Even though construed as a limitation on the

right of street railroads to cross streets in providing adequate facilities for use in connection with its transit lines already constructed with the consent of the city,. the section, in words, applies only to street railroads. The section was not construed in that case to prevent the crossing of streets by street railroads under such circumstances. In fact, quite to the contrary. At page 442, Judge WALKER said: "That the Public Service Commission has ample power to order the construction of such sidetracks, switches, cross-overs and terminals as are purely incidental to the operation of main lines is not questioned; but the Legislature has no constitutional authority; did not intend, and hence the Commission is not empowered, to compel public utilities, in the absence of authority in their charters, to enter new territory by the extension of their lines of roads."

The police power exercised by the city over its streets is only a power delegated by the State. The police power is inherent in sovereignty, that is, in the State. The municipality can make no claim of inherent right to exercise police power over its streets as against a delegation of the exercise of that power to another agency of the State. [Peterson v. Railroad, 265 Mo. 462.] The argument of appellants concerning the abuses of the rights of the city liable to occur if the assent of the city is not required might be persuasive if addressed to the Legislature. In my opinion, the State has delegated the exercise of its police power over streets and highways to the Commission with right of review in the courts. The courts can be trusted not to approve any order of the Commission which is unreasonable.

There is a further question raised in the brief and argument of counsel for the Missouri, Kansas & Texas Railway Company which is not considered in the majority opinion. That question should be disposed of before the judgment of the trial court sustaining the order of the Public Service Commission may properly be reversed. Counsel for the railway company contend that the provisions of Section 13, Article XII, of our Constitution,

make unnecessary the assent of the city, and inferentially, for that matter, the assent of the Commission as well. I will not here undertake to consider that question because it is unnecessary under the views I hold as to the applicable statutes.

For the reasons stated the judgment of the trial court should be affirmed, and I respectfully dissent to the contrary conclusion reached by the majority.