CITY OF CAPE GIRARDEAU, Appellant, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY.

In Banc, December 18, 1924.

1. **RAILROAD: Franchise: City Ordinance: Suit in Equity to Compel Observance: Delegation of Police Power.**  A controversy having arisen between a city and a railroad company, which owned and operated a line of railroad within the corporate limits and over the streets, the city, in settlement, enacted an ordinance which required the railroad company to maintain at the city "the present shop and facilities, or their equivalent and capacity, for doing what is known as 'running' repairs for engines and cars" and whereby the company agreed that "it will not construct or operate shops for what is known as 'heavy' or 'classified' repairs at any

point within one hundred miles" of said city "unless it be at" said city.  The railroad company accepted the ordinance and undertook to and ultimately did certain things specified in the ordinance, including maintenance of shops for making running repairs; and the city brings suit to compel the company to maintain the "running" repair shops in the city, and to prevent the construction of "heavy" repair shops elsewhere.  *Held, first*, that if the pleaded defense that authority over the railroad shops has been vested in the Public Service Commission is correct, the courts cannot enforce the franchise agreement, and all other pleaded defenses need not be considered; *second*, the ordinance constituted the franchise of the railroad company, and by statute there has been delegated to the Public Service Commission full power to hear and determine all complaints, of the city or any person or corporation, that the railroad company is violating the provisions or requirements of said franchise, and to take whatever action or make whatever order on the hearing of such complaint the facts justify, and to determine whether the location and maintenance of the shops at the places called for by the ordinance agreement would be in the interest of the general public; and, therefore, the city is not entitled to maintain a mandatory injunction to compel the railroad company to maintain and operate repair shops in the city, or to prevent the construction and operation of shops elsewhere.

2. ———: ———: Movement of Shops: Police Power.  Railroad shops are not specifically mentioned in the statute (Sec. 10458, R. S. 1919) authorizing the Public Service Commission to make and enforce appropriate orders in order to secure adequate service or facilities for the transportation of passengers or property, but such shops clearly come within the all-inclusive words "or any other property, construction, apparatus, equipment, facilities or device for use by any common carrier, railroad corporation," etc., and efficient and economical operation of a railroad would be impossible unless the State, or its delegated agency, the Public Service Commission, had the power, in the exercise of the police power and in the public interest, to regulate the location of repair shops, and the location of such shops and divisions cannot be fixed irrevocably by a city ordinance.

3. ———: ———: ———: ———: Abridgement.  The Constitution declares that "the exercise of the police power of the State shall never be abridged, or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals, or the general well-being of the State," and this provision sustains the power, granted by statute to the Public Service Commission, in order to secure efficient railroad

transportation at reasonable and fair rates, to determine location of railroad shops, and authorizes the Commission to approve a location different from that designated in a city ordinance accepted by the company.

*Held*, by GRAVES, C. J., concurring, with whom WOODSON, J., concurs, that the Public Service Commission is not a court, and cannot either enforce or abrogate contracts, but is only authorized to make orders which will best subserve the public welfare, irrespective of contract rights.

*Held*, by WALKER, J., dissenting, that the validity of the contract between the city and the railroad company is conceded, and by it the company agreed not to change the location of its repair shops, and the statute does not clothe the Public Service Commission with power to construe, limit or abrogate the contract, and, therefore, the interest of the public in the management and operation of the railroad being in no wise affected, the railroad company cannot invoke the statutory power of regulation vested in the commission to defeat a suit in equity, brought by the city, to compel the company to keep its contract and to prevent it from moving its shops in violation of said contract.

4. ——: ——: ——: ——: Abrogation of Antecedent Ordinance: Impairment of Contracts. The statute gives to the Public Service Commission, as the State's agency, power to relieve a public utility of the provisions specified in an ordinance enacted prior to the enactment of the Public Utilities Act, where the enforcement of said ordinance would be injurious to or incompatible with the public welfare, and such statute does not violate the constitutional provision forbidding the enactment of laws impairing the obligation of contracts. By the express words of the Constitution neither the State, nor any of its municipal agencies, nor the Legislature, has power to contract away the police power of the State, and all franchises granted or ordinances passed by cities affecting subjects or matters coming within the police power are to be considered as having been granted or passed with reference to the power of the State, in the exercise of its police power, to legislate with respect to such matters and subjects, unfettered by provisions of such franchises or ordinances.

5. **POLICE POWER:** Exercise by Legislature: Delegation to Public Service Commission. The police power is an attribute of sovereignty, and the Constitution has declared that such power shall never be abridged, even by the General Assembly; but subject to this qualification the exercise of the power rests with the Legislature, and the exercise of so much of the power as has to do with rates and service of railroads and other named public utilities has been

delegated by the Legislature to the Public Service Commission, and until this delegation of power is revoked by the Legislature the exercise by the commission of so much of the power so delegated is exclusive.

6. **RAILROAD: Movement of Shops: Contrary to City Ordinance: Power of Commission.** Subject to review by the courts, and within limits that do not interfere with or impose undue burdens upon interstate commerce or amount to regulation thereof, the Public Service Commission, notwithstanding an existing ordinance accepted by a railroad company and by which it agreed to maintain its "running" repair shops in a certain city and not to construct "heavy" repair shops elsewhere within one hundred miles of said city, has power to determine whether the company shall be compelled to maintain "running" repair shops in said city or whether it may construct "heavy" repair shops at other points within one hundred miles of such city.

Citations Pertaining to Subjects of Headnotes: 1 to 3, **Railroads:** 1 and 3, 33 Cyc. 49 (1926 Anno); 2, 33 Cyc. 47; 4, **Constitutional Law,** 12 C. J. par. 603, and **Railroads,** 33 Cyc. 47; 5, **Constitutional Law,** 12 C. J. pars. 338, 603; 6, **Railroads,** 33 Cyc. 47, 48.

Appeal from Butler Circuit Court.—*Hon. Almon Ing,* Judge.

AFFIRMED.

*James A. Barks* and *John A. Hope* for appellant.

(1) Plaintiff had the power to prescribe the conditions set out in the ordinance in question. The railroad company accepted the ordinance; every condition specified in the ordinance then and thereby became binding upon the railroad company. Sec. 8314, R. S. 1919; Secs. 9230, 9233, 9250, 9254, R. S. 1909; Railroad v. Kirkwood, 159 Mo. 239; Kansas City v. Railroad, 187 Mo. 146; 3 Elliott on Railroads, sec. 1081; 3 Dillon on Municipal Corps. sec. 706; Chicago Railroad v. Chicago, 66 L. R. A. 959; People ex rel. v. Railroad, 49 L. R. A. 650; Internatl. Ry. Co. v. Anderson Co., 246 U. S. 424, 62 L. Ed. 807. (2) Even if the condition in the ordinance requiring the railway company to maintain its repair shops and do its repair work at the city could be said to

be *ultra vires,* the condition would, nevertheless, be binding upon the railway company. Chicago Railroad v. Chicago, 66 L. R. A. 959; People ex rel. v. Railroad, 49 L. R. A. 650. The above-cited statutory provisions, giving the city power to consent to the use of its streets and its land on the river front, and to impose such conditions upon its consent as it might see fit, were in force in 1911 when the ordinance was passed and accepted, and are still in force. That power is not withdrawn, modified or restricted as defendant's answer seems to assert, by the Public Service Act of 1913, giving the commission power to regulate railway transportation service and the rates to be charged therefor. On the contrary, the "Public Service Commission Act" recognizes and confirms the power of municipalities in the respects above mentioned. Sub. 1, sec. 53, P. S. C. Act (Sec. 10462, R. S. 1919.) And the same section prohibits the Commission from issuing any such certificate of public convenience and necessity until after the corporation "has received consent, franchise or permit of the proper county, city, municipal or other public authority." Sub. 3, sec. 53, P. S. C. Act (Sec. 10462, R. S. 1919); Mt. View v. Tel. Co., 7 Mo. P. S. C. 341; In Matter Polk County, 8 Mo. P. S. C. 681; In re Kansas City Ry. Co., 8 Mo. P. S. C. 315. (3) Defendant is precluded not only by general principles of law from ignoring the conditions of the ordinance relating to the repair shops, but it is prohibited from so doing by Secs. 3042 to 3047, R. S. 1909; Internatl. Ry. Co. v. Anderson Co., 246 U. S. 424. (4) There is no merit in the constitutional questions attempted to be raised in the answer. Chicago Ry. Co. v. Chicago, 66 L. R. A. 959; West Chicago v. Illinois, 59 L. Ed. 845; Northern Co. v. Chicago, 25 L. Ed. 336. On the contrary the position assumed by defendant, particularly its claim to be absolved from the obligations imposed by the ordinance by reason of the passage of the Public Service Law, violates plaintiff's constitutional rights. See Sec. 19, art. 12, Mo. Constitution, which provides that the

General Assembly shall pass no law for the benefit of any railroad or other corporation retrospective in its operation or which imposes on the people of any municipal subdivision of the State a new liability in respect of transactions or considerations already past. See also Sec. 15, Art. 2, Mo. Constitution, which prohibits the General Assembly from passing any law impairing the obligation of contracts; also the similar provision in the Constitution of the United States. See also Knight v. Railroad, 70 Mo. 235. (5) If defendant, in that part of its answer which questions the jurisdiction of the court, means to say that the Public Service Law divests the court of power to hear and determine the issues herein and gives that power to the commission, the point is without merit. The questions involved in this case are judicial questions. The judicial power is vested by the Constitution in the courts therein named, and cannot be given to any other department. Sec. 1, art. 5, Mo. Constitution. (6) Injunction is the proper remedy. 14 R. C. L. sec. 82, p. 381; Sec. 98, p. 397; Joy v. St. Louis, 34 L. Ed. 857.

*Ward & Reeves, W. F. Evans* and *E. T. Miller* for respondent.

(1) The authority over respondent's shops, if vested in the State or any of its instrumentalities, is an authority to be exercised solely by the Public Service Commission. Appellant cannot by franchise, contract or otherwise curtail its power. State ex rel. v. Pub. Serv. Comm., 275 Mo. 201; Railroad v. Pub Serv. Comm., 281 Mo. 52; Secs. 10436, 10452, 10455, 10458, R. S. 1919. (2) Injunction is not the proper remedy. Bailey v. Culver 84 Mo. 540; Manufacturing Co. v. Railway, 230 Mo. 90.

DAVID E. BLAIR, P. J.—Action in equity seeking mandatory injunction to compel respondent to maintain and operate repair shops in the city of Cape Girar-

deau and to prevent construction and maintenance of shops elsewhere. The action was begun in the Cape Girardeau Court of Common Pleas. The venue was first changed to the Circuit Court of Cape Girardeau County, and later to the Circuit Court of Butler County. Upon trial the temporary injunction was dissolved. Judgment was entered for defendant, and plaintiff was granted an appeal to this court.

For convenience, the city of Cape Girardeau will be referred to as "city," St. Louis-San Francisco Railway Company, the respondent, will be referred to as "railway company," and St. Louis & San Francisco Railroad Company as "railroad company," as has been done in the briefs.

For many years prior to 1911, the railroad company owned and operated a line of railroad within the corporate limits and over the streets of said city. A controversy existed between the railroad company and the city whereby the city claimed damages for alleged breach by the railroad company of certain city ordinances. In 1911 there was enacted by the city and accepted by the railroad company what is known as Ordinance No. 935, by its terms extending and renewing the rights within the city previously enjoyed by the railroad company. Among other provisions of said ordinance was one requiring the railroad to maintain at said city its (then) present shops and facilities for making running repairs, and forbidding the railroad company to construct or operate shops for heavy repairs at any other point within one hundred miles of said city. It is this provision of the ordinance which the city claims the railway company, as the successor of the railroad company, has violated and which the city seeks to enforce in this suit. If it becomes necessary to mention other provisions of said ordinance, relative to undertakings of the railroad company, they will be noticed later.

By the terms of said ordinance, the permission, authority and grant of privileges of the railroad company

were made to depend wholly ''upon the original and continued performance of all the conditions imposed in this ordinance.'' Said ordinance provided for the forfeiture of all the rights of the railroad company for failure on its part to perform any of the conditions of the ordinance and for a reverter to the city of the rights granted thereunder, and further provided that, after the giving to the railroad company by the city of the specified notice, it should be required to remove its tracks, buildings, depots and property of all kind from said city or suffer forfeiture of such property to the city. It was also provided that, after such forfeiture, the railroad company should ''thereafter be relieved and released from any and all duties and obligations to said city to operate its railroad and trains to and through said city.''

Condition No. 14 of said ordinance is as follows:

''The Frisco Railroad Company shall maintain at Cape Girardeau the present shop and facilities, or their equivalent and capacity, for doing what is known as 'running' repairs for engines and cars; and that it will not construct and operate shops for what is known as 'heavy' or 'classified' repairs at any point within one hundred miles of Cape Girardeau, unless it be at Cape Girardeau.''

Then follow illustrations of what is meant by heavy repairs and by light or running repairs, and a statement showing what lines of railroad are covered by said Condition No. 14.

After accepting the ordinance, the railroad company undertook to, and, though probably not entirely within the time specified, ultimately did, do certain things specified in the ordinance of the city, including maintenance of shops for making running repairs. In 1913 receivers for the railroad company were appointed by the United States District Court at St. Louis, at the instance of creditors and bondholders of the railroad company. Under authority granted by the Federal court, the receivers

did some of the uncompleted work specified in the ordinance and continued to maintain repair shops in said city. Eventually mortgages securing bonds of the railroad company were foreclosed in the Federal court and defendant, the railway company, became the purchaser of the railroad and property of the railroad company and received a deed therefor. The sale was confirmed August 29, 1916.

Within six months after delivery to it of said deed, the railway company filed its election, under the provisions of Article Twelfth of the final decree, whereby it adopted and assumed a great number of contracts, leases etc., of the railroad company and of its receivers. Ordinance 935 of the city of Cape Girardeau was not one of the contracts thus adopted and assumed by the terms of such election.

During the late World War, the property of the railway company was taken over and operated by the Federal Government. Ultimately said property and its control and management were restored to the railway company. The facts incident to such Federal control and operation need not be detailed. Shops were maintained by Cape Girardeau during such Federal control and after the property was returned to the railway company.

At the trial below the city offered evidence tending to show that, prior to the institution of this action, the railway company had violated and was continuing to violate Condition No. 14 of the Ordinance No. 935 by not maintaining in said city such shops for doing running repairs as existed at the passage of the ordinance, or shops of their equivalent and capacity, and was also violating said condition by constructing and preparing to operate shops for heavy or classified repairs at a point other than, and within one hundred miles of, Cape Girardeau.

Numerous questions are presented in the briefs. The railway company contends that it did not accept

and adopt Ordinance No. 935, when it purchased the property of the railroad company at foreclosure sale, and is not bound thereby; that the city, having filed an intervening petition in the receivership proceeding in the Federal court and having failed to appeal from the order of that court denying it the right so to intervene, is bound by the decree entered therein; that, to compel the railway company to maintain shops in said city, would be a direct regulation of and burden upon interstate commerce; that the right of the railway company to operate its railroad through said city depends upon a state grant and not upon the grant of said city; that injunction is not the proper remedy; that authority over the railway company shops, if vested in the State, is an authority to be exercised solely by the Public Service Commission, because the State's police power cannot be curtailed or abridged by franchise or contract. The city's contentions are exactly the opposite.

The powers of the Public Service Commission in the premises should first be considered, for, if the question of the maintenance of railroad shops at any particular point falls within the police power of the State, delegated to the commission, the courts cannot enforce the maintenance of said Condition No. 14 and the judgment of the trial court dismissing the petition must be affirmed, regardless of any other question in the case.

The powers of the Public Service Commission over public utilities are broad indeed. In so far as railroads are concerned Section 10452, Revised Statutes 1919, provides that,

"The commission shall have the general supervision of all common carriers, railroads, street railroads, railroad corporations and street railroad corporations as hereinbefore defined, and shall have power to and shall examine the same and keep informed as to their general condition, their capitalization, their franchises and the manner in which their lines and property, owned, leased, controlled or operated are managed, conducted,

and operated, not only with respect to the adequacy, security and accommodation afforded by their service, but also with respect to their compliance with all the provisions of law, orders and decisions of the commission and charter requirements  .  .  ."

That the commission has been delegated power to make orders requiring railroads to perform provisions of their franchises is clearly provided in Section 10455. Subdivision 2 of said section reads as follows:

"Complaints may be made to the commission by any person or corporation aggrieved, by petition or complaint, in writing, setting forth any thing or act done or omitted to be done by any common carrier, railroad corporation or street railroad corporation in violation, or claimed to be in violation, of any provision of law or of the terms and conditions of its franchise or charter or of any order or decision of the commission. Upon the presentation of such a complaint the commission shall cause a copy thereof to be forwarded to the person or corporation complained of, which may be accompanied by an order, directed to such person or corporation, requiring that the matters complained of be satisfied, or that the charges be answered in writing within a time to be specified by the commission. If the person or corporation complained of shall make reparation for any injury alleged and shall cease to commit, or to permit, the violation of law, franchise, order or decision charged in the complaint, and shall notify the commission of that fact before the time allowed for answer, the commission need take no further action on the charges. If, however, the charges contained in such petition be not thus satisfied, and it shall appear to the commission that there are reasonable grounds therefor, it shall investigate such charges in such manner and by such means as it shall deem proper, and take such action within its powers as the facts justify."

Ordinance No. 935, passed by the council of said city, approved by its mayor and accepted by the railroad com-

pany, constituted the franchise of the railroad company. Assuming, without so deciding, that said ordinance also constitutes the franchise under which the railway company is now operating its said railroad in said city, it is quite clear that the Public Service Commission has been delegated full power to hear and determine all complaints, at the instance of the city or of any person or corporation, that said railway company is violating the provisions or requirements of said franchise. It is equally clear that the commission is empowered to take action or make whatever order on the hearing of such complaint the facts justify.

The business of a railroad corporation is to furnish transportation of persons and property. To that end it should be required to have and use such apparatus, equipment, facilities, etc., as are necessary to furnish such transportation safely, efficiently and at reasonable speed. Section 10458 authorizes the commission to make and enforce appropriate orders to provide the equipment, facilities, etc., essential to the rendition of such transportation service. Railroad shops are not specially mentioned in said section, but such shops clearly come within the all-inclusive words "or any other property, construction, apparatus, equipment, facilities or device for use by any common carrier, railroad corporation," etc. A railroad corporation is entitled to earn a reasonable return upon the investment necessary to give such service. The investment necessary to give such character of transportation serves the public. A greater investment than that is detrimental to the public interest for the reason that such unnecessary investment, if forced upon the railroad, may justly call for increased rates for transportation.

Suppose a case: In the early days of steam railroading, locomotives and train equipment were much less efficient and road beds less safe than they are now. A one-hundred-mile run then possibly required as many hours of time as a run of two hundred miles now re-

quires. A city one hundred miles from the railroad terminus might then have exacted, in its franchise to the railroad, that such city should be a division point and that during the life of such franchise, the railroad should change engines and train crews at that point. It requires no more than its mere statement to demonstrate that, when locomotives, train equipment and road beds become so improved that a run of two hundred miles can be made by such improved locomotive and train equipment, manned by the same number of employees, with the same ease and safety and within the same time formerly required to run one hundred miles, economical and efficient operation demands that the division point be moved to correspond to the improvement in such locomotives, train equipment and road bed. The public interest would suffer seriously if the franchise provision for retention of division point and change of train crews at such city should be held inviolable. Economical and efficient operation would be impossible unless the State or its delegated agency had the power, under the police power of the State, to say that further performance of such provision of the franchise was incompatible with the general welfare.

What I am trying to show by the foregoing illustration applies equally in principle to the maintenance of railroad shops. Their location and capacity cannot be determined in advance and irrevocably fixed in a franchise, without the possibility, indeed almost certainty, of injuriously affecting the ability of the railroad to give adequate service in the future at a reasonable cost, and thus cause it to fail to that extent to subserve the general welfare.

Section 5 of Article XII of our Constitution provides that "the exercise of the police power of the State shall never be abridged, or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals, or the general well-being of the State."

Under the foregoing provision, this court has sustained the power of the Public Service Commission, when public welfare demanded such action, to authorize a waterworks company to collect a hydrant rental constituting an increase over an ordinance rate (State ex rel. Sedalia v. Public Service Commission, 275 Mo. 201); to grant authority to a street railway company to charge fares in excess of those fixed by an ordinance (St. Louis v. Public Service Commission, 276 Mo. 509); to fix telephone rates in excess of those named in a franchise (Fulton v. Public Service Commission, 275 Mo. 67); to authorize a street railway company to take up a portion of its tracks which could not be maintained and operated, without confiscating the property of such street railway company or destroying its power to serve the public (Southwest Mo. Railroad Co. v. Public Service Commission, 281 Mo. 52.)

In the case last above cited, BOND, J., in discussing the police power of the State, said:

"In the exercise of this great lawmaking function, the State is not obstructed by a contract between one of its agencies (cities, towns or villages) and other persons, for the reason that the State cannot alienate any of its sovereign powers which are *necessary* to the public welfare, or essential to the protection of the health, morals and property of its citizens. As an obvious corollary of this principle, no municipality, either by ordinance or contract, can impose upon a public utility essential to the welfare of the people, conditions of operation or maintenance which would confiscate its property or destroy its power to serve the public."

In some, if not all, of the cases above cited, it was urged, as the city contends in the case at bar, that the particular ordinance or franchise antedated the enactment of the Public Service Law, and that legislation authorizing the commission to increase rates fixed by ordinance or to relieve the public utility of the performance of provisions specified in such ordinance or fran-

chise, deemed to be injurious to or incompatible with the public welfare, violated our constitutional provision (Art. 2, sec. 15) forbidding the enactment of laws impairing the obligation of contracts. The answer to this contention, made in those cases and in fact made in similar cases in other states and in the Federal courts, wherever the question has been considered, is that neither the State nor any of its agencies has or ever has had the power to contract away the police power of the State and that franchises granted or ordinances passed by cities affecting subjects and matters, coming within the police power of the State, must be considered as having been granted or passed with reference to the power of the State, in the exercise of its police power, to legislate with respect to such matters and subjects, unfettered by provisions of such franchises and ordinances.

There is nothing in the case of State ex rel. Kansas City v. Public Service Commission, 301 Mo. 179, 257 S. W. 462, cited and relied upon by appellant, which denies the power of the commission over the subject-matter here involved. The majority opinion in that case denied the power of the commission to require a railroad to construct its tracks across a public street in a city, without having first procured the assent of the city, as provided in Section 9850, Revised Statutes 1919. The Kansas City case is not out of harmony with St. Louis v. Public Service Commission, 276 Mo. 509, wherein this court very clearly pointed out the difference between the power of the city to deny to a street railway the right to construct and operate its railroad within such city without its consent and the power of the State to legislate as to matters covered by provisions of the franchise of a street railroad already constructed and in operation, when such matters involve the general welfare.

The police power is an attribute of the sovereignty of the State and the Constitution of this State has declared that such power shall never be abridged, even by the Legislature. Subject to this qualification, the exer-

cise of the power rests with the Legislature. The exercise of so much power as has to do with rates and service of railroads and other named public utilities has been delegated by the Legislature to the Public Service Commission. Until this power has been revoked by the Legislature, the power of the commission in the premises is exclusive.

We hold that, subject to review by the courts and within limits which do not interfere with or impose an undue burden upon interstate commerce or amount to regulation thereof, the Public Service Commission has the power to determine whether the railway company shall be required to maintain at Cape Girardeau shops for making running repairs and whether it may maintain shops for making heavy repairs at other points within one hundred miles thereof. The ordinance provisions cannot control the action of the Commission, in face of the general public welfare, even if such provision be held to run with the franchise of the railway company, as contended by the city.

This view of the case makes it necessary to consider other contentions of the railway company, urged in support of the correctness of the judgment below, and it results that such judgment should be and it is affirmed. *White, J.,* concurs in result; *Walker, J.,* dissents in separate opinion; cause transferred to Court in Banc.

PER CURIAM:—The foregoing opinion of DAVID E. BLAIR, J., in Division Two, is adopted as the opinion of Court in Banc. *David E. Blair, Woodson, Ragland* and *White, JJ.,* concur; *Graves, C. J.,* concurs in separate opinion, in which *Woodson, J.,* concurs; *James T. Blair, J.,* not sitting; *Walker, J.,* renews his dissent.

GRAVES, C. J. (concurring).—I concur in the majority opinion. I think the majority opinion runs along proper lines. That my concurrence may not be misunderstood, I wish to reiterate what I have hereto-

fore written. . The Public Service Commission is not a court, and cannot undertake to either enforce or abrogate contracts. It deals with common carriers (by virtue of the written law) upon the theory of public service, and not in view of any contract. What contracts may have been made is not a real consideration of the Public Service Commission, under its limited authority. If a concrete case comes within its purview, the Commission is authorized to make orders (under the police power) which will best subserve the public welfare. This is irrespective of contract rights. Whether there be any remedy for violated contract rights is not and cannot be an issue in the case. I so read the opinion, and with this explanation of my understanding of the opinion, I concur. There are several other reasons, which might be assigned for concurrence.

WALKER, J. (dissenting).—As I understand the facts, as stated in the majority opinion, the validity of the contract under consideration is conceded. Otherwise the ancillary power alleged to exist in regard to the same in the Public Service Commission, cannot be invoked as a determinative factor in this case. The relegation of the rights of the parties hereto to the Public Service Commission is based upon the assumption that the determination of the matter at issue has been delegated by the State to the Commission in the exercise of its police power, inherent in the latter as an attribute of its sovereignty. If this be true, then the power possessed by the Commission is purely derivative and as such is subject to a strict construction, not only as to its terms, but the manner in which the power conferred is to be exercised. Reading the sections quoted in the opinion, nothing appears which gives color to the conclusion that the Commission is clothed with power to construe, limit or abrogate this contract. Neither by its express terms, nor from what we deem to be a reasonable construction of same, has it any relation to the

general operation of the road, the regulation of its condition or other exercise of its franchises. The ordinance under which the contract was framed generously granted certain valuable rights of way over its streets and highways to the company. The latter, moved by the advantages thus obtained, agreed to maintain in the city, shops and certain facilities for the repair of its cars and engines. How or in what respect the interests of the public in the management and operation of the railroad are thereby affected is not readily to be determined. To this, as we understand the purpose and province of the Public Service Commission, is its power confined. I have searched in vain for any grant of power under which the Commission may construe or regulate, much less abrogate, a contract of the character under consideration. Unless it is expressed in terms it cannot, under the rule of construction applicable, be said to exist. I feel impelled, therefore, to dissent from the conclusion reached by my learned brother.