**UNION ELECTRIC COMPANY, a Missouri corporation, Plaintiff-Appellant,**

**v.**

**CITY OF CRESTWOOD, a municipal corporation, et al., Defendants-Respondents.**

**No. 56709.**

Supreme Court of Missouri, Division No. 2.

Sept. 10, 1973.

Motion for Rehearing or to Transfer to Court en Banc Denied Oct. 8, 1973.

Kerth, Thies, Schreiber, Hamel & Dee, C. Kenneth Thies, Clayton, William E. Jaudes, St. Louis, for plaintiff Union Electric Co.

Robert E. Murray, Crestwood, City Atty., and Atty. for the City of Crestwood.

FINCH, Justice.

The issue presented herein is whether a municipal ordinance which prohibits thereafter any aboveground construction of utility transmission lines is valid. The trial court upheld the ordinance. We reverse.

The pertinent facts are these: Union Electric Company (UE) is an electric utility company serving a considerable area, including the City of St. Louis and the numerous municipalities located in St. Louis County. It has eleven generating plants, located as far north as Keokuk, Iowa, and as far west as Bagnell Dam. All of the generating plants are interconnected by a large grid of transmission lines at voltages of 138KV or higher. In addition, the company has connections with other utility companies whereby power can be supplied in the event of emergency. When the 138 KV lines reach consumption areas, the voltage is reduced and then distributed to business and residential customers. Bulk stations and substations which reduce the voltage are located with little or no regard for municipal boundaries and may serve all or parts of several communities.

In 1958, the voters of Crestwood, Missouri, approved an ordinance whereby UE was granted a 20-year franchise to construct its "poles, towers, wires, conduits, * * * in, along, across, over and under the streets, roads, alleys, sidewalks, * * * and other public places in the City of Crestwood" for the purpose of "transmitting, furnishing and distributing electricity." Since that time, UE has operated in Crestwood pursuant to that franchise. With the exception of its distribution lines within the Crestwood Plaza, a shopping center, all lines have been installed aboveground.

The Marshall bulk substation, located west of the City of Kirkwood, serves Crestwood and other communities. Power is transmitted therefrom at 34KV on feeders to various substations, including Crestwood substation. There, and at other perimeter substations located outside of Crestwood but serving customers in Crestwood, the voltage is further reduced and then transmitted on distribution feeders to business and residential customers.

The company maintains a long-range planning section in order to forecast needs and to design the necessary lines and equipment to meet those needs. Pursuant to its long-range plan, UE proposed to install a new 7-mile 138KV main transmission line from the Marshall bulk station to a new bulk station known as Lakeshire. It

was to help relieve various overloaded sub-stations. The proposed line, consisting of single pole structures, was to carry the 138KV line plus a smaller 34KV subtransmission line and was to be located on the right-of-way of the Missouri Pacific Railroad. 1.8 miles of the line would be within the city limits of the City of Crestwood. The rest of the proposed 7-mile line was outside of Crestwood.

Sometime in 1968, officials of Crestwood had a conference with officials of UE relative to the possibility of placing all UE lines underground, but UE discouraged the idea on the basis of the additional cost involved. Subsequently, and before UE started construction of the proposed 138KV line, the Board of Aldermen of the City of Crestwood passed its Ordinance No. 1119, the ordinance here in question. This ordinance prohibited future above-ground construction of transmission lines in the City of Crestwood and made violation of the ordinance a misdemeanor. This declaratory judgment suit by UE followed adoption of that ordinance.

UE's petition in that action asserted that (1) the ordinance is ultra vires in that it exceeds the authority of the city and invades the field of regulation of utility companies which the state has vested in and reserved to the Public Service Commission; (2) the additional cost of placing these lines underground would be so much greater that it would prevent UE from performing its statutory duty to render adequate and safe service at a reasonable cost; (3) the ordinance exceeds the police power of the city in that it does not reasonably relate to the health, safety and welfare of the public; and (4) the ordinance results in a partial taking of UE's vested property and contract rights as granted to it by the existing 20-year franchise.

The trial court overruled these contentions and upheld the validity of the ordi-nance, relying primarily on § 71.520 [1] (which governs the granting of municipal utility franchises), § 79.410 (which relates to police and health regulations and authorizes the city to regulate the placement of poles on or the making of excavations through or under streets, alleys, sidewalks, or other public places in the city) and § 393.010 (which relates to companies supplying electricity and provides that such corporations shall have the power to lay conductors for conveying electricity through the streets, alleys and squares of the city, with the consent of the municipal authorities, under such reasonable regulations as are prescribed).

Years ago, by statutes now incorporated in Chapter 386, the state created the Missouri Public Service Commission, conferring on it jurisdiction over various public utilities, including electric power companies. Section 386.250 recites the general area of jurisdiction of the Commission, and subsequent sections detail particular authority of the commission with respect to electric power companies. Such powers of supervision and regulation are sweeping, covering such matters as the quality of service supplied, methods used in manufacturing, transmitting and distributing power, rates to be charged, records to be kept, reports to be made, and indebtedness which may be incurred.[2]

■ We conclude, as did the Supreme Court of New Jersey with respect to its comparable statutes in the case of In re Public Service Electric and Gas Co., 35 N. J. 358, 173 A.2d 233, 239 (1961), that the statutes relative to the Public Service Commission constitute "a legislative recognition that the public interest in proper regulation of public utilities transcends municipal or county lines, and that a centralized control must be entrusted to an agency whose continually developing expertise will assure uniformly safe, proper

---

1. All statutory references are to RSMo 1969, V.A.M.S., unless otherwise indicated.

2. These sections include 393.140, 393.150, 393.-180, 393.190, 393.200, 393.220, 393.230 and 393.270.

and adequate service by utilities throughout the state."

Subsequently, the New Jersey court at 173 A.2d l.c. 240, went on to say: "It is rather difficult to conceive of a subject which more requires uniform regulation at a high and broad level of authority than the method of transmission of electric power, especially where it must be generated in a single location and distributed and used in many and distant places. Were each municipality through which a power line has to pass free to impose its own ideas of how the current should be transmitted through it, nothing but chaos would result, and neither the utility nor the state agency vested with control could be assured of ability to fulfill its obligations of furnishing safe, adequate and proper service to the public in all areas."

The validity of the foregoing conclusion is demonstrated by the evidence in this case. It disclosed that to construct the 1.8 miles of 138KV line aboveground would cost $217,000, and the 34KV line would cost $84,300. However, to place these underground for the 1.8 miles located in Crestwood, the cost would increase to $1,560,000 and $496,600, respectively. If Crestwood had the right by its ordinance to specify how UE should design and install its transmission lines or to require it to spend this substantially greater sum in constructing said lines, then other municipalities would have like authority. The record shows that UE serves the City of St. Louis and 99 municipalities in St. Louis County. In addition, it operates elsewhere, although that is not detailed in this record. If 100 such municipalities each had the right to impose its own requirements with respect to installation of transmission facilities, a hodgepodge of methods of construction could result and costs and resulting capital requirements could mushroom. As a result, the supervision and control by the Public Service Commission with respect to the company, its facilities, its method of operation, its service, its indebtedness, its investment, and its rates which the General Assembly obviously contemplated would be nullified. As the New Jersey court observed, "chaos would result" and neither UE nor the Public Service Commission could be assured that the company would be able to and would furnish uniform, adequate and reasonable service to all customers.[3]

We conclude and hold that Ordinance No. 1119 invades the area of regula-

---

3. While not a part of the record on appeal or dispositive of this case, it is of interest to note, and we take judicial notice of the fact, that the Public Service Commission has taken action to establish a comprehensive statewide plan with reference to what shall be done with respect to undergrounding of electric transmission and distribution lines of certificated electric utility companies in this state.

On March 3, 1970, in Case No. 16,926, the Commission entered an order directing its Staff to immediately undertake an investigation of all factors relative to the undergrounding of electric transmission and distribution lines, and on completion of the investigation to report its findings and recommendations concerning "(1) the desirability of a uniform statewide tariff for the underground construction of electric distribution and transmission lines, (2) the economic feasibility of underground construction of electric distribution and transmission lines as opposed to overhead construction of such lines in light of the comparative costs of their construction and maintenance, and (3) the establishment of undergrounding priorities with accompanying guidelines to aid in future analysis and determination of such priorities."

Thereafter, the order was amended on September 22, 1970, to provide that the investigation should proceed in phases. It specified that Phase I should relate to underground distribution systems in new residential subdivisions, including the power lines from substations to said subdivisions, and Phase II was to relate to underground distribution systems in high density commercial areas.

Thereafter, on June 28, 1971, the Commission adopted General Order No. 52–Section I, which was thereafter amended on October 26, 1971, requiring undergrounding of electrical distribution systems in new residential subdivisions, and directing certificated electric companies to file tariffs to cover said undergrounding directed by that General Order. Thus, action relative to Phase I has already been implemented, with other reports and possible subsequent action to follow.

tion vested in the Public Service Commission by the General Assembly and hence that Crestwood, in adopting that ordinance, exceeded its authority. For this reason, the ordinance is invalid, and we so hold.

This conclusion is not changed by our consideration of the provisions of §§ 71.-520, 79.410 and 393.010 or earlier cases construing those statutes. Said sections confer certain rights on municipalities but not the power to enact an ordinance such as No. 1119.

■ Section 71.520 relates to the granting of utility franchises by municipalities. It provides that privileges granted in such ordinances shall be subject to the rules, regulations and conditions expressed in the ordinance. In other words, a city may say to a utility that if you want a franchise in this city, we will grant it on certain specified conditions, and the parties then agree thereon. Thus, in Missouri Valley Realty Co. v. Cupples Station Light, Heat and Power Co., 199 S.W. 151 (Mo. 1917); Frolichstein v. Cupples Station Light, Heat and Power Co., 201 Mo.App. 162, 210 S.W. 90 (1919), and State ex rel. McAllister v. Cupples Station Light, Heat & Power Co., 283 Mo. 115, 223 S.W. 75 (Mo. banc 1920), all cited and relied on by Crestwood, the ordinance involved was a franchise ordinance passed by the City of St. Louis and accepted by the utility company. It provided for underground cables in certain locations and this court upheld the validity of that ordinance. In the case now under consideration, however, we do not deal with that kind of situation. Instead, UE holds a previously granted franchise and Crestwood now seeks to eliminate rights granted therein and to require all subsequent construction, even of high voltage lines carrying power through the city on private right-of-way for use by other communities, be placed underground. Section 71.520 is not applicable and does not authorize Ordinance No. 1119.

■ Nor is the ordinance authorized by § 79.410. That section relates to police and health regulations and authorizes cities to prohibit encroachment on sidewalks, streets, alleys, and other public places, and to regulate the erection of electric light poles and the making of excavations in any public street, sidewalk, alley, or other public place. Ordinance No. 1119 is much broader than that. It prohibits all overhead transmission and distribution lines, whether on public or private property. Section 79.410 does not authorize such an ordinance.

■ Section 393.010, the third statutory provision relied on by Crestwood, provides that companies furnishing electricity to a city are authorized to lay conductors to convey the electricity back through streets, alleys, and squares, with consent of the city, and to set their poles and wires along, across, or under the public roads "in such manner as not to incommode the public in the use of such roads, streets and waters." Again, it is apparent that this section is inapplicable to the proposed 138KV line under consideration and cannot authorize the ordinance which sought to require that it be placed underground.

Nor do cases such as Holland Realty and Power Co. v. City of St. Louis, 282 Mo. 180, 221 S.W. 51 (1920), and State ex inf. McKittrick ex rel. City of Lebanon v. Standard Telephone Co., 85 S.W.2d 613 (Mo. banc 1935), both cited by Crestwood, govern this case. Holland involved a situation wherein a franchise utility installed cables through an alley without securing the authority required from the city under the terms of the franchise ordinance. This court held that Holland was obligated to comply with that franchise requirement. The Standard Telephone Company case was a quo warranto proceeding to require removal of poles and lines in the city after the company's franchise had expired and not been renewed. Neither decision is applicable to the question here presented.

We have considered the other cases cited by Crestwood but conclude that they do not

require us to sustain the validity of Ordinance No. 1119. For example, Crestwood cites a series of cases, one of which is State ex inf. Shartel ex rel. City of Sikeston v. Missouri Utilities Co., 53 S.W.2d 394 (Mo. banc 1932), for the proposition that the establishment of the Public Service Commission did not prohibit reasonable regulation of utilities by municipalities. In this series of cases, this court did recognize that a municipality may grant or refuse to grant permission to place utilities above or below its streets. However, as previously noted, that is not the issue here presented. In addition, it should be noted that in the Sikeston case this court at 53 S.W.2d l.c. 398, said this: "It is unnecessary for us to determine in this case the effect of possible conflict between the franchise requirements imposed by a municipality and conditions imposed by a Public Service Commission in granting a certificate of convenience and necessity, because no such situation is presented. The distinction between a municipality's absolute right to refuse or grant a franchise and its right to impose obligations and conditions in connection with a grant is clearly pointed out in St. Louis v. Public Serv. Com., 276 Mo. 509, 519–522, 207 S.W. 799, and we have not hesitated to sustain the commission's power to authorize rates in excess of and acts contrary to provisions contained in franchise agreements when the public welfare demanded such action. City of Cape Girardeau v. St. Louis-San Francisco Railway Co., 305 Mo. 590, 603, 267 S.W. 601, 36 A.L.R. 1488."

In view of the conclusions hereinabove set out, we deem it unnecessary to consider and decide the other contentions advanced by UE as reasons for declaring Ordinance No. 1119 invalid.

Judgment reversed.

HENLEY, P. J., and CONNETT, Special Judge, concur.

MORGAN, J., not sitting.