UNION ELECTRIC COMPANY, a
Missouri Corporation,
Plaintiff-Respondent,

v.

CITY OF CRESTWOOD et al.,
Defendants-Appellants.

No. 60121.

Supreme Court of Missouri,
En Banc.

March 13, 1978.

James L. Sullivan, Stephen W. Woodard, St. Louis, W. Ray Raleigh, City Atty., Crestwood, for defendants-appellants.

---

7.  303 U.S. at 314, 58 S.Ct. at 564, quoting Lewis' Sutherland on Statutory Construction, 2d ed., Vol. II, pp. 787–8.

Richard D. Schreiber, Elihu M. Hyndman, Richard D. Watters, Lashly, Caruthers, Thies, Rava & Hamel, Clayton, Charles A. Bremer, St. Louis, for plaintiff-respondent.

HENLEY, Judge.

This is an action brought by Union Electric Company (UE) against the City of Crestwood, et al. (City) seeking: (1) a judgment declaring that the City is without authority to regulate or control by its zoning ordinances the location of that part of an intercity electric transmission line proposed to be constructed and maintained within the city; and, (2) a decree enjoining the City from interfering with the use by UE of a railroad right-of-way for that purpose. The case was transferred to this court for review after the Court of Appeals, St. Louis district, had affirmed a judgment and decree in favor of UE. We affirm.

· In *Union Electric Company v. City of Crestwood*, 499 S.W.2d 480, 481 (Mo.1973), which may be referred to as Crestwood I, the issue presented was "whether a municipal ordinance which prohibits * * * aboveground construction of utility transmission lines is valid." We held the ordinance invalid for the reason it "invades the area of regulation vested in the Public Service Commission by the General Assembly and hence that Crestwood, in adopting that ordinance, exceeded its authority." 499 S.W.2d at 483.

In September, 1973, approximately two weeks after the decision of this court in *Crestwood I*, UE sought a special permit from the City to construct above ground this same intercity transmission line on the same railroad right-of-way involved in *Crestwood I*. A decision on the application was delayed and since no definite action had been taken, UE filed this suit in September, 1974. After hearings on the application in January and February, 1975, the permit was denied March 11, 1975. Thereafter, this case was submitted to the trial court and resulted, as indicated, in a judgment and decree for UE.

The issue presented in this case, a sequel to *Crestwood I*, is whether the City may, through the restrictions of its zoning ordinances, regulate or control the location or method of transmission of high voltage electric energy through this municipality for delivery to several parts of UE's system in the St. Louis metropolitan area.

The basic facts are stated fully in *Crestwood I*. In summary, they are that after a study of the needs for electric power within its whole system, UE determined in 1968 that in order to meet growing demands it would be necessary to construct in the southwest part of St. Louis county a high voltage transmission line approximately 8.3 miles long, extending from its Marshall substation, immediately west of Kirkwood, through the City of Crestwood and other communities, as well as part of the unincorporated part of the county, to its Lakeshire substation. A number of alternate routes were studied, but it was determined that the route above described, most of which would be located on rights-of-way of the Missouri Pacific and Frisco railroads, would serve best the purposes of all concerned. Of the total length of the route selected, 1.8 miles is in Crestwood confined to the Missouri Pacific right-of-way, running through industrial, residential and school areas.

In deciding *Crestwood I* the court relied heavily upon the reasoning of the decision of the Supreme Court of New Jersey in the case of *In re Public Service Electric and Gas Company*, 35 N.J. 358, 173 A.2d 233 (1969). The New Jersey Supreme Court had before it for decision a two-pronged attack upon the efforts of Public Service Electric and Gas Company to construct and maintain a high voltage electric transmission line through the borough of Roselle. One prong of the attack by the borough was based on its general police power ordinance which required underground installation of all transmission lines carrying more than 33,000 volts. The other was based on an amendment of its local zoning ordinance which required a utility to obtain a permit before erecting, in any zone in the borough, poles and towers for transmission of electric current. After ruling that Roselle's police power ordinance requiring underground in-

stallation was clearly beyond municipal power, because it invaded the area of control vested in the Board of Public Utility Commissioners, and prefatory to its consideration of the attack based upon the zoning ordinance requirement of a permit, the court said:

"Perhaps at this point it would not be amiss to say something, from the standpoint of municipal power, about the legal comparability of this Roselle zoning ordinance amendment and what we have called the borough police power ordinance * * *. There is a striking similarity in purpose and effect between the two regulations. Each basically seeks to assert municipal control over the method of transmission of electric power anywhere within the borough, the first by an absolute prohibition of overhead transmission of more than 33,000 volts, and the second by requiring municipal permit for any tower transmission under standards of local agency judgment confined to detrimental effect upon or necessary convenience of the single community. If, as we have held, the prohibitory legislation is bad for the reason we have given, it is difficult to see why the permissive regulation is not also basically invalid for the same reason." 35 N.J. at 374, 173 A.2d at 241.

The New Jersey court further said in connection with the above-quoted remarks:

"It would seem to make no difference that the latter was enacted under the guise of zoning legislation. After all, zoning is fundamentally municipal legislation under the police power directed to land use regulation * * * for purposes * * * akin to those which may found the exercise of the power in other situations. Considerable regulation commonly found in zoning legislation could as well, or perhaps more properly, be validly imposed by separate enactment, not by name tied to the zoning ordinance. Conversely, inclusion of such a regulation within the confines of the zoning ordinance does not *ipso facto* clothe it with validity which it would not otherwise have. * * * Moreover, and of particular significance here, calling something 'zoning' cannot cloak a municipality with power to act

in a field and in a way which is otherwise foreclosed to it by supervening state legislation or policy." *Id.*

Again, we agree with the reasoning and logic of the New Jersey Supreme Court, this time in connection with its decision of the issue involving control by one city through its zoning ordinances of intercity transmission of high voltage electricity.

We conclude and hold that by the application of its local zoning ordinances to this intercity transmission line the City invaded the area of regulation and control vested in the Public Service Commission and thereby exceeded its authority.

The judgment and decree are affirmed.

MORGAN, C. J., and BARDGETT, FINCH, DONNELLY and SEILER, JJ., and WELBORN, Special Judge, concur.

RENDLEN, J., not sitting.