STATE of Missouri at the relation of CITY OF GOWER, a Municipal Corporation, Respondent,

v.

Roy GEE, Sid Johnson, George Isaacs, Lawrence Maxey and Rex Deshon, as members of and constituting the Board of Zoning Adjustment of Buchanan County, Missouri, Appellants.

No. KCD 29647.

Missouri Court of Appeals, Kansas City District.

Oct. 30, 1978.

Michael A. Insco, Pros. Atty., Buchanan County, St. Joseph, for appellants.

Lawrence V. Fisher, Frost, Fisher & Poland, Plattsburg, for respondent.

Before SHANGLER, P. J., and SWOFFORD, C. J., and WASSERSTROM, J.

SWOFFORD, Chief Judge.

The City of Gower, Clinton County, Missouri, is a municipality of the fourth class. It is geographically located adjacent to rural Buchanan County, Missouri, a county of the second class. Following the passage of a bond issue by the voters of Gower to finance the construction of a sewer treatment facility, Gower acquired an option to purchase land outside its municipal corporate limits but within five miles thereof, for

that purpose. This land was in Buchanan County and was zoned for agricultural use by the County. Gower made application to the Buchanan County Board of Zoning Adjustment for an exception to that zoning and, after hearing, this application was rejected by the Board. Gower thereupon petitioned the Circuit Court of Buchanan County for a Writ of Certiorari, which was granted. The above facts were stipulated by the parties and there were no disputed factual issues before the court below. That court, based upon its findings of fact and extensive conclusions of law, by its decree of June 28, 1977 declared all proceedings before the Board to be *coram non judice* and void for want of jurisdiction, under applicable law, and reversed the Board's order rejecting Gower's application and remanded the cause to the Board with directions to dismiss the proceedings. This appeal was thereupon taken.

The board raises a single point upon appeal, that the court erred in holding the Board to be without jurisdiction "because the extraterritorial power of eminent domain does not exempt a fourth class City from the zoning laws of a second class County". On the other hand, Gower asserts that under applicable constitutional, statutory and decisional law, it is exempt from the zoning laws of Buchanan County, restricting the use of the property, upon which it desires to construct its sewage disposal facility, to agricultural purposes.

Thus, the issue here presented is a conflict of jurisdiction between two governmental bodies in the exercise of their police powers and necessitates a determination as to which has overriding and superior power under the facts in this case. This presents a matter of law.

■ Preliminary to a consideration of the decisive issue here presented, it should be noted that there is no dispute, and indeed, none would be tenable, that the control and disposal of sewage by Gower, on the one hand, and the control of the use of property by Buchanan County by zoning, on the other hand, are governmental as opposed to proprietary functions within the ambit of the proper exercise of police power. *State on Information of Dalton v. Metropolitan St. Louis Sewer District,* 365 Mo. 1, 275 S.W.2d 225, 230[5] (1955); *State ex rel. Askew v. Kopp,* 330 S.W.2d 882 (Mo.1960), discussed infra. Rather, Gower, while not challenging the right of Buchanan County to adopt the zoning here in question, claims that it is exempt from its provisions.

The obligation of this Court on this appeal in determination of the issues, thus narrowly confined, necessitates an examination of the constitutional, statutory and decisional declarations and the extent of the power of each of the governmental entities here at war on the issue presented.

The basic power of Gower stems from Article IV, Section 37, Constitution of Missouri (1945), which provides:

"The health and general welfare of the people are matters of primary public concern; and to secure them * * * the general assembly may grant power with respect thereto to counties, cities or other political subdivisions of the state."

Pursuant to this constitutional authority, § 71.680 RSMo 1969 (Laws 1955, p. 305, Sec. 1) provides in part:

"1. In addition to their other powers for the protection of public health, each city of the * * * fourth class of this state * * * may do such other and further acts as are expedient *for the protection and preservation of the public health, as the public health may be affected* by the accumulation of * * * refuse matter and municipal waste. Such cities may acquire by purchase * * or otherwise, *within or without the corporate limits of such cities* incinerators for the destruction of * * * refuse matter and municipal waste; acquire * * all equipment necessary or expedient * * *; and *acquire by any of such means purification plants or sewage disposal plants* for the purification of all sewage accumulating in such cities. * * * *"* (Emphasis added)

The regulatory powers conferred by this section do not limit but rather define the

sovereign powers inherent in any city within its terms and permits them to exercise such powers with legislative recognition. Section 79.370 RSMo 1969; *Campbell v. City of Frontenac*, 527 S.W.2d 643, 645[3] (Mo.App.1975).

Further clarification was afforded by Section 79.380 RSMo 1969, under that Chapter of the statutes applying specifically to fourth class cities. This section provides in part:

" * * * They may purchase *or condemn* and hold for the city, *within or without the city limits, or within five miles therefrom* all necessary lands for * * * sewer carriage and outfall * * * " [1] (Emphasis added)

Chapter 64, "County Planning, Zoning and Recreation", RSMo 1969, sets up a broad and sweeping method whereby counties may adopt a master zoning plan, administer such plan and enforce its provisions. No dispute exists in this case that such law empowered Buchanan County to set up such a plan and to zone the property here involved for agricultural use. However, the provisions of this law are couched in general terms and contain no provision or provisions which prohibit the exercise of the specific constitutional and legislative powers granted to municipalities of the fourth class, such as Gower, to acquire by condemnation or purchase property for the governmental purpose of construction of a sewage disposal plant under §§ 71.680 and 79.380 RSMo, supra.

■ The power of eminent domain is inherent in sovereignty and exists in the State of Missouri and initially the right to exercise such power "is exclusively a legislative prerogative, subject only to such limitations as are fixed by the constitution itself." *State ex rel. St. Louis Union Trust Company and City of Ladue v. Ferriss*, 304 S.W.2d 896, 898[1, 2] (Mo. banc 1957).

As pointed out in *Ferriss,* supra, the only constitutional restriction placed upon this sovereign power is that "private property

shall not be taken * * * for public use without just compensation." Article I, § 26.

Valid argument cannot be maintained under these facts and applicable law that the City of Gower was not delegated specifically the power to exercise the state's sovereign right to acquire property by condemnation or purchase for the purposes enumerated under § 71.680 and within the limits of § 79.380. No constitutional provision limits this power (except as above noted) and no contention is made that the proposed use, acquisition and location of the sewage disposal plant by Gower is not within the specific power delegated by these sections.

In the *Ferriss* case, the City of Ladue under its general zoning plan and ordinances excluded the construction and maintenance of schools within a certain zone. Under a legislative grant of authority, constitutionally derived, empowering it to do so, the School District of Ladue commenced condemnation proceedings to acquire land within that zone for the purpose of constructing a schoolhouse. Prohibition was instituted to prevent the hearing or processing of the condemnation proceedings. The Supreme Court held that the school district under the legislation giving it the power to select, locate and procure sites for public schools had the right to do so and the zoning ordinances of Ladue could not preclude it from the exercise of such right. The preliminary rule in prohibition was quashed.

Obviously, *Ferriss* involved a conflict between the zoning laws of a municipality and the constitutionally derived power of the municipal school board to establish a schoolhouse on land selected by such board. The case at bar, as previously stated, involves such a dispute as to property use between Buchanan County and Gower. However, the holding in *Ferriss,* that the exclusive constitutional and statutory powers vested in the school board, could not be limited or

---

1. This section of the statute was amended by Laws 1969, p. 136, § 1, by extending the *five* mile limitation as to distance to *ten* miles.

restricted by the municipal zoning ordinances, applies with equal force and vigor to the conflict here revealed.

The case of *Askew v. Kopp, et al. and City of Raytown,* 330 S.W.2d 882 (Mo.1960) is precisely in point and controlling here. There, the City of Raytown, a fourth class city, located in Jackson County, acquired options on land located 2½ miles outside its boundaries for the purpose of building a sewage disposal plant. This property was in an area of Jackson County zoned for agriculture. Raytown thereupon applied for authorization from the county to construct such facility and, after a public hearing, the Board of Zoning Adjustment entered its order granting the authorization requested. The protestants (adjoining landowners) thereupon filed their petition for a writ of certiorari to the Circuit Court where the order of the Board of Zoning Adjustment was affirmed. The protestants appealed.

In its opinion the court traced the source of Raytown's power to Article IV, Section 37, of the Constitution of Missouri, as implemented by Section 79.380 and Section 71.680 and stated, l.c. 887[3]:

> "No applicable provision of the Constitution relating to zoning is to be found."

as applicable to counties of the first class. The power of such class of counties to zone property in unincorporated areas of the county is derived solely from § 64.090 RSMo 1969. The court pointed out, however, that such is not the case for special charter counties. This class of counties enjoys constitutional authority to include in its charter a provision "for the vesting and exercise of legislative power pertaining to public health, * * * planning and zoning, in the part of the county outside incorporated cities." Article VI, Section 18(c), Constitution of Missouri. However, the court stated "but Jackson County does not operate under a special charter" as, indeed, it did not in 1958 when the *Askew* litigation occurred. See, Footnote No. 2, p. 887, *Askew.* The Court further stated, l.c. 888, 890[4–8, 9, 11]:

"A review of these provisions in the light of the decided cases leads to the conclusion that the City of Raytown is not subject to the Zoning Order of Jackson County. Local zoning ordinances are not applicable to public uses of property for which an agency of the government has the power to acquire lands by the exercise of the power of eminent domain. * *

\* \* \* \* \* \*

The power granted to the county court under the zoning enabling act with respect to the unincorporated areas of the county *must yield* to the power granted cities of the fourth class to purchase or condemn all necessary lands within five miles of such city for sewer carriage and outfall and for the construction of sewage disposal plants. The right to condemn is superior to property rights, and is limited only by the constitution. * * * The granting to the city of the right to condemn for sewer carriage and outfall, § 79.380, and to acquire sewage disposal plants, § 71.680, either within or without the corporate limits and within five miles thereof, *in unconditional language, without any requirement in either section that the city respect or comply with local zoning regulations,* together with the fact that the zoning law, § 64.090, does not empower the county court to regulate, or restrict the location of city-owned sewage disposal plants in the unincorporated areas of the county, * * * indicate *a legislative intent that the city's right to locate, acquire and establish a sewage disposal plant not be subject to the zoning orders of the county court.* * * * (Emphasis added)

\* \* \* \* \* \*

The fact that the city's rights in the lands in question were not actually acquired by the exercise of the right of eminent domain, but by private negotiation and agreement with the owners, does not militate against our holding. The important consideration is that the city had the *right to condemn* private property for the use in question and not wheth-

er the city in the particular case actually resorted to condemnation. (Emphasis the Court's)

\*   \*   \*   \*   \*   \*

We conclude that in locating the sewage disposal plant the city was not subject to the county zoning order. \* \* \* All of the proceedings before both [County] bodies were coram non judice and void."

The court in *Askew* reversed the judgment of the Circuit Court and remanded the cause with directions to that court to reverse the order of the county board of zoning adjustment and to remand the cause to that board with directions to dismiss the proceedings.

The appellants herein place their reliance on the cases of *St. Louis County, et al. v. City of Manchester,* 360 S.W.2d 638 (Mo. banc 1962) and *Appelbaum, et al. v. St. Louis County,* 451 S.W.2d 107 (Mo.1970) in their effort to reverse the judgment below. Those decisions are clearly distinguishable and are not authoritative here.

Both of these cases involved St. Louis County, a first class *charter* county. In *Manchester,* that municipality sought to establish a sewage treatment plant outside its city limits in an area zoned by the county as residential. The Supreme Court reversed a judgment of the Circuit Court dismissing an action wherein the county sought to enjoin the construction of such facilities and remanded the case with directions to grant the injunction. After discussing the constitutional and statutory enactments, above reviewed in relation to the *Askew* case, the court said (l.c. 641[3]):

"Contrary to the city's contention, the grant of municipal powers to *charter* counties under Section 18, Art. VI *is meaningful and vests rights which cannot be taken away or impaired by the general assembly,* one of which is to exercise legislative power pertaining to planning and zoning in the part of the county outside of incorporated cities. \* \* \*" (Emphasis added)

The *Manchester* court distinguished the *Askew* decision upon the basis that Jackson County was not (at that time) a home rule charter county to which Article VI, Section 18, was applicable.

In the *Appelbaum* case, St. Louis County proposed to construct an incinerator and land fill on land within the Villages of St. John and Bel-Ridge in St. Louis County which land was zoned by municipal ordinances for residential and light industrial use. The appellants sought an injunction against the county to halt this project, which was denied at the trial level. The Supreme Court affirmed and, after pointing out that St. Louis County was a first class *charter* county under Article VI, Section 18 of the Missouri Constitution, and had the statutory power as such, under the provisions of Section 49.303 RSMo 1969, to condemn land for the purposes contemplated where necessary for protection of public health, stated (l.c. 112[3]), quoting from an Ohio decision:

"\* \* \* 'To suppose that zoning ordinances may limit or prevent the public use for which land is taken is to invest municipalities with power to restrict the exercise of the power of eminent domain' \* \* \*"

The court further held that a *charter* county was not restricted by the statutes limiting zoning by counties to unincorporated areas. In discussing and distinguishing the *Manchester* case, not only upon the facts there presented and upon the basis that Jackson County was then not a charter county possessing any power under Article VI, Section 18, of the Missouri Constitution, the court also employed this language (l.c. 113[3]):

"\* \* \* By contrast, it has been demonstrated that St. Louis County has *specific constitutional authority* with respect to \* \* \* [the proposed project] \* \* and the appellant municipalities do not possess any grant of power under which to restrict the County *even upon land within those municipalities.* \* \* \*" (Emphasis added)

The *Manchester* and *Appelbaum* cases have little factual or legal application to the case at bar. Rather, this case must be ruled upon the principles of *Askew.* Accordingly, the City of Gower had the legislative authority to construct its sewage plant as proposed and the Buchanan County zoning restriction on the use of the land site had no application and posed no obstacle to such use by Gower. Neither did the Buchanan County Board of Zoning Adjustment have any jurisdiction over the matter, its proceedings were *coram non judice,* and the judgment of the Circuit Court must be affirmed.

It is so ordered.

All concur.