CITY OF KIRKWOOD, Missouri, a
Municipal Corporation,
Plaintiff-Appellant,

v.

CITY OF SUNSET HILLS, Missouri, a
Municipal Corporation,
Defendant-Respondent.

Nos. 40603, 40676, 40677, 40735, 40804
and 40863.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 21, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 15, 1979.

Application to Transfer Denied
Dec. 6, 1979.

Robert B. Hoemeke, Evans, Hoemeke, Casey & McGhee, St. Louis, for plaintiff-appellant.

Robert C. Jones, Ziercher, Hocker, Tzinberg, Human & Michenfelder, Clayton, for defendant-respondent.

KELLY, Judge.

This is a consolidated appeal from two judgments entered in two divisions of the St. Louis County Circuit Court the subject matter of which, reduced to simple terms, is whether the City of Kirkwood (hereinafter Kirkwood), a city of the third class, may legally acquire and operate a public swimming pool and recreational facility within the city limits of the City of Sunset Hills (hereinafter Sunset Hills), a city of the fourth class.

The facts are that the two cities adjoin, Kirkwood's southern city limits abutting onto the northern city limits of Sunset Hills. Kirkwood commenced negotiations with Mr. and Mrs. Kermit Reed for the purchase of their property known as Club Fountainbleau which is located within the city limits of Sunset Hills but which abuts Emmenegger Nature Park which is situate within the city limits of Kirkwood, and owned by Kirkwood. These negotiations continued over a period of approximately one and one-half years and while they were in progress representatives of Kirkwood met on two occasions with representatives of Sunset Hills in January of 1977 for the purpose of discussing the possibility of Kirkwood and Sunset Hills purchasing and using the Reed property jointly. As early as September 17, 1976, Sunset Hills had informed Kirkwood of its own interest in purchasing the property.

At this stage of the negotiations Kirkwood officials proceeded with an initial reading of an ordinance authorizing the purchase of the Club Fountainbleau property at a regularly scheduled meeting of the Kirkwood City Council. The second and third readings of the ordinance were to take place at the meeting of the Kirkwood City Council on February 3, 1977.

On January 26, 1977, the Mayor of Sunset Hills sent a letter informing Kirkwood officials that Sunset Hills was not interested in purchasing the property, and on February 1, 1977, the Sunset Hills Board of Aldermen introduced Ordinance No. 622, read it three times, and enacted it. According to the terms of this ordinance the creation, maintenance or operation of any public recreational facility, or swimming pool within the City, except by the City itself, was prohibited. Excluded from the prohibition of the ordinance was property being so used by a private owner or operator at the time of its adoption. A police officer of Sunset Hills delivered a copy of the ordinance to the Kirkwood officials on February 2, 1977, and at the regular meeting of the Kirkwood City Council on February 3, 1977, the Kirkwood ordinance for the acquisition of the property was tabled and the City Attorney was directed to contest the validity of Sunset Hills Ordinance No. 622 and to obtain a determination of Kirkwood's rights were it to purchase the Club Fountainbleau property.

On February 25, 1977, Kirkwood instituted a suit praying for a declaration of its rights under §§ 77.140 and 90.010 RSMo. 1969 [1] and whether it could acquire property for parks or pleasure grounds outside its city limits, and if so, its rights to control the use of said property for parks or pleasure grounds immune from the jurisdiction of the city wherein said property should be situate, and for a declaration that Ordinance No. 622 of Sunset Hills was void, illegal and without force and effect.

1. Statutory references are to RSMo. 1969 unless otherwise stated.

After the issues in this action were joined, the parties each filed motions for summary judgment, but Kirkwood alone supported its motions with affidavits. Sunset Hills submitted exhibits. The motions were submitted to the trial court without further evidence, and on December 21, 1977, a judgment was entered sustaining both parties' motions. This judgment declared that § 90.010 gave Kirkwood the power to acquire, for the purposes mentioned therein, property located in Sunset Hills; it did not rule on that portion of Kirkwood's prayer with respect to its rights to control the use of said parks or pleasure grounds immune from jurisdiction of Sunset Hills unless its holding can be construed as a ruling on that issue. As to the validity of Ordinance No. 622, the judgment reads:

> Ordinance 622 of the City of Sunset Hills cannot be and is not now by this judgment being held invalid under the general attack levied against it as being 'without legal force or effect' and 'void, illegal and contrary to the laws of the State of Missouri.' Whether it could be successfully attacked on other or more specific grounds is not being ruled by this judgment. Nor does this Court rule any issue which might be raised after action by the defendants under Ordinance 622.

Thereafter, on January 26, 1978, Kirkwood passed Ordinance No. 6231 authorizing the purchase of the Club Fontainbleau property and on February 17, 1978, the sale was closed. A pool care contract was entered into with a professional maintenance company and letters were sent to Sunset Hills' Director of Public Health and City Attorney informing them of the intention of Kirkwood to open the pool facility for the summer of 1978.

On May 5, 1978, Sunset Hills filed an action seeking a temporary restraining order, a preliminary injunction and a permanent injunction to prevent Kirkwood from proceeding with the opening of the pool and the operation of the recreational facility. No temporary restraining order or temporary injunction issued, and the cause came on for trial on May 24, 1978. The trial court took judicial notice of the file in the prior declaratory judgment action, evidence was adduced, and on June 29, 1978, a judgment was entered enjoining Kirkwood permanently from creating, maintaining or operating a public recreational facility or public swimming pool on the property.

Kirkwood filed a timely notice of appeal from this judgment on August 24, 1978, and this court granted it leave to take an appeal out of time from the judgment in the declaratory judgment action pursuant to the provisions of Rule 81.07 on July 6, 1978, and on November 28, 1978, ordered the appeals consolidated.

The judgment in the declaratory action was entered pursuant to motions for summary judgment filed by Kirkwood and the defendants therein. The general rule with respect to review of a summary judgment is that the reviewing court must determine whether there is an issue of fact to be tried or whether the moving party is shown by unassailable proof to be entitled to judgment as a matter of law, Rule 74.-04(e); it is equivalent to reviewing a court-tried or equity proceeding, and if, as a matter of law, the judgment is sustainable upon any theory, the judgment of the trial court must be sustained. *Kaw Valley State Bank & Trust v. Commercial Bank of Liberty, N.A.,* 567 S.W.2d 710, 712[1] (Mo.App. 1978); *Kerr v. Grand Foundries, Inc.,* 525 S.W.2d 783, 784[2] (Mo.App.1975); *Swink v. Swink,* 367 S.W.2d 575, 577[2] (Mo.1963).

From our vantage point, we conclude that while the trial court's judgment declared that Kirkwood had the power to acquire the property pursuant to the authority of § 90.010 for the purposes mentioned therein despite the fact it was located within the city limits of Sunset Hills, it did not rule on the question whether Kirkwood had the right to control the use and operation of the property acquired, immune from the jurisdiction of Sunset Hills as prayed in Kirkwood's petition. Nor did it rule on the validity of Ordinance No. 622. We derive this conclusion from the wording of the judgment wherein the trial court said: "Ordinance 622 of the City of Sunset Hills

cannot be and is not now by this judgment being held invalid under the general attack levied against it as being 'without legal force or effect' and 'void, illegal and contrary to the laws of the State of Missouri.' Whether it could be successfully attacked on other grounds is not being ruled by this judgment. Nor does this court rule any issue which might be raised after action by the defendants under Ordinance 622." [2]

The first point to be reviewed is whether the trial court erred in failing to declare Ordinance No. 622 of Sunset Hills invalid.

As best we can discern from the judgment and a memorandum filed therewith by the trial court, this question was not reached because the trial court was of the opinion that Kirkwood's pleadings were not sufficiently specific to entitle this issue to consideration. In the memorandum the trial court said: "Ordinance 622 might have been challenged on specific grounds which the court refrains from delineating."

■ While it has been held that allegations such as "illegal, invalid, void, unlawful, unconstitutional, improper, arbitrary and capricious," when unsupported by pleaded facts to show their basis, are conclusions of the pleader and not statements of fact and not to be considered whether a claim or a defense have been stated, *State ex rel. City of Creve Coeur v. St. Louis County*, 369 S.W.2d 184, 187[1] (Mo.1963), and that when one relies upon unreasonableness to avoid a city ordinance facts which render it unreasonable must be alleged, *Holland Furnace Company v. City of Chaffee*, 279 S.W.2d 63, 66[2] (Mo.App. 1955), we conclude that Kirkwood's petition did, in fact, allege sufficient facts to point out the legal issues involved in this declaratory judgment action.

■ In determining the sufficiency of plaintiff's petition to state a claim for declaratory judgment, we must accord it the benefit of every favorable and reasonable intendment the fact well pleaded will permit. A petition is not ordinarily held insufficient merely because it lacks definiteness in its allegations, and whether a petition for declaratory judgment is sufficient depends upon whether its averments invoke substantial principles of law which entitle the plaintiff to relief. *Schmitt v. City of Hazelwood*, 487 S.W.2d 882, 884[3, 4] (Mo.App. 1972).

■ Viewed in the light of these principles, we conclude that Kirkwood's petition invokes substantial principles of law entitling it to the relief sought. The petition contains allegations of Kirkwood's intent to acquire the tract of real property described in an Exhibit to the petition for the purpose of operating a recreational facility thereon pursuant to the authority of §§ 90.010 and 77.140; the petition alleges the adoption of Ordinance No. 622 by the City of Sunset Hills, the effect of which is to thwart the exercise of the grant of authority to acquire the property pursuant to the power granted Kirkwood by these statutes, and asserts that it is for these reasons that the Ordinance is without legal force or effect and is "void, illegal and *contrary to the laws of the State of Missouri*." (emphasis supplied).

■ The law in this state is that an ordinance which contravenes the statutes of Missouri is void. *Trantina v. Board of Trustees of the Firemen's Retirement System*, 503 S.W.2d 148, 152[4] (Mo.App.1973); *State ex rel. Burnau v. Valley Park Fire Protection Dist.*, 477 S.W.2d 734, 735[2] (Mo. App.1972). If, as Kirkwood alleges, Sunset Hills' ordinance contravenes §§ 90.010 or 77.140, or both, it is void, illegal and contrary to the laws of the State of Missouri.

■ The resolution of the conflict between these two protagonists revolves around the powers a city enjoys over the territory within its boundaries, and how far it can go in the exercise of its powers to promote the health, safety, morals, or the general welfare of the state. A municipal corporation is a creature of the legislature possessing only those powers expressly

2. The parties, in oral argument, admit that they were confused by this ambiguity, each being of the opinion that the judgment was favorable to their position.

granted, or those necessarily or fairly implied in or incidental to express grants, or those essential to the declared objects of the municipality, and any reasonable doubt as to whether a power has been delegated to a municipality is resolved in favor of non-delegation. *Anderson v. City of Olivette*, 518 S.W.2d 34, 39[4, 5] (Mo.1975).

Kirkwood considered Ordinance No. 622 to be a zoning ordinance enacted pursuant to the powers delegated to Sunset Hills by Ch. 89; Sunset Hills' counsel, in oral argument, stated that he too thought it was a zoning ordinance. The cases cited by the parties all involve zoning ordinances. The case was presented on summary judgment on that theory and was so argued in this court. Therefore, we shall review the case in that light.[3]

■ The Zoning Enabling Act, §§ 89.-010–89.140, constitutes the sole source of power and the measure of authority for cities, towns and villages in zoning matters, *Huttig v. City of Richmond Heights*, 372 S.W.2d 833[1] (Mo.1963), and contemplates the division of a city by legislative regulation into districts, and the prescription and application in each district of regulations having to do with structural and architectural designs of buildings and of regulations prescribing the use to which buildings within designated districts may be put. See §§ 89.010–89.140 RSMo. 1969. However, the power to regulate granted by the Zoning Enabling Act, by the very terms of the Act, is limited to "buildings, structures and land for trade, industry, residence or other purposes." The terms "trade, industry, residence . . ." all relate to private property and the words "other purposes" in the law has been held not to extend the zoning power to restrict or limit the use of public property for public purposes. *State of Missouri ex rel. Askew v. Kopp*, 330 S.W.2d 882, 888[6] (Mo.1960); *State ex rel. St. Louis Union Trust Co. v. Ferriss*, 304 S.W.2d 896, 900 (Mo.banc 1957).

This is not the first case in which the power of a Missouri municipality to zone public uses has been questioned. *State ex rel. St. Louis Union Trust Co. v. Ferriss,* supra, decided that a zoning ordinance of the City of Ladue restricting the location and erection of school buildings to certain areas within the city limits could not deprive the school district of its power to condemn a tract of land for the purpose of erecting school facilities thereon despite the fact the tract was situated in an area in which the erection of any schoolhouse was prohibited.

There are also two cases holding that sewage disposal facilities could be constructed by a city outside its city limits pursuant to power conferred upon said cities by state law despite the fact the construction of said facilities violated zoning restrictions of the counties in which the sewage disposal facilities were to be constructed. *State ex rel. Askew v. Kopp*, 330 S.W.2d at 888 and *State ex rel. Gower v. Gee*, 573 S.W.2d 107, 112[3] (Mo.App.1978). And in *Appelbaum v. St. Louis County*, 451 S.W.2d 107, 112[3] (Mo.1970) the construction of an incinerator and landfill on land within the Villages of St. John and Bel-Ridge by St. Louis County was permitted despite the fact that the zoning ordinances of the Villages involved barred such facilities.

In only one case was a different result reached. In *St. Louis County v. City of Manchester*, 360 S.W.2d 638, 642[5] (Mo. banc 1962), the zoning ordinances of St. Louis County were held to be lawful restrictions upon the location of a sewage disposal plant and related facilities by a fourth class city in the unincorporated area of said county.

In *Union Electric Company v. City of Crestwood*, 499 S.W.2d 480 (Mo.1973) the question presented was whether a municipal ordinance prohibiting the construction above ground of utility transmission lines

---

3. We have difficulty viewing this ordinance as a zoning ordinance enacted pursuant to the authority of Ch. 89; we believe that it is more likely an attempt to enact an ordinance pursu-

ant to the city's general police powers under authority of §§ 79.450–79.470, but neither party to this appeal has viewed it in that light.

was valid. The Supreme Court reversed the trial court's judgment in a declaratory judgment action upholding the ordinance because it invaded the area of regulation vested in the Public Service Commission by statute and therefore the municipality exceeded its authority and the ordinance was invalid.

In a subsequent proceeding involving the same protagonists, *Union Electric Company v. City of Crestwood*, 562 S.W.2d 344 (Mo. banc 1978), the Supreme Court affirmed a judgment of the trial court in favor of the electric company declaring the city was without authority to regulate by its zoning ordinances the location of an intercity electric transmission line and enjoining the city from interfering with the use by the electric company of a railroad right-of-way for that purpose.

None of the cases heretofore cited have considered the question presented here, i. e., whether the power conferred upon cities, and more especially a city of the third class, to acquire land for the purpose of establishing a "park or pleasure grounds" not within its city limits, is subject to a municipal ordinance of an adjoining city in which said land to be acquired is located, when the establishment and operation of a park or pleasure grounds would be in violation of an ordinance prohibiting the operation of parks and pleasure grounds by anyone other than the host city.

Kirkwood relies on the authority of § 90.010 which empowers any city to acquire property for the purpose of establishing a park or pleasure grounds by gift, purchase or condemnation of lands within such city or within one mile thereof, and § 77.140 which authorizes a city of the third class to purchase and hold grounds for public parks within the city, or within three miles thereof. The trial court, in its judgment, decided that Kirkwood had the power to acquire for the purpose of establishing a park or pleasure grounds property located in Sunset Hills; it did not decide what powers in this respect Kirkwood enjoyed under § 77.140. On appeal, however, Kirkwood does not raise this failure to rule on

§ 77.140, except to incorporate in Point I that the trial court erred in not holding Ordinance No. 622 invalid. Kirkwood's allegation is that said ordinance is an effort to countermand a power conferred upon Kirkwood by that Section as well as § 90.-010.

In deciding the extent, if any, to which the use of land by a governmental unit is subject to applicable zoning regulations the courts of this nation have used varying tests. One approach has been to rule in favor of the superior sovereign. *See Aviation Services Inc. v. Board of Adjustment*, 20 N.J. 275, 119 A.2d 761 (1956). A second test is to determine whether the institutional use proposed for the land is "governmental" or "proprietary" in nature. *See City of Scottsdale v. Municipal Court*, 90 Ariz. 393, 368 P.2d 637 (1962), and *Tabor v. City of Benton Harbor*, 280 Mich. 522, 274 N.W. 324 (1937). A third test is one referred to as the "Power of Eminent Domain Test." *See Mayor of Savannah v. Collins*, 211 Ga. 191, 84 S.E.2d 454 (1954). A fourth test is known as the "Statutory Guidance Test." *See Magilner v. Metropolitan Plan Commission*, 236 Ind. 298, 140 N.E.2d 220 (1957). A test of more recent origin, and one which is more appealing to us, is known as the "Balancing of Interests Test." *See Rutgers State University v. Piluso*, 60 N.J. 142, 286 A.2d 697 (1972); Note, 84 Harv.L. Rev. 869 (1971).

In *State ex rel. St. Louis Union Trust Co. v. Ferriss*, supra, the court relied on the constitutional provision that the general assembly establish and maintain public schools, Article IX, Sec. 1(a) of the Constitution of Missouri and § 165.100 RSMo. 1949, which specifically provided that the school district of the City of Ladue should locate sites for schoolhouses and could acquire said sites by condemnation if it could not agree with the owner thereof as to the price to be paid for the same, or for any other cause could not secure a title thereto. A close reading of the decision reveals that the court applied both the power of eminent domain test and the statutory guidance test to resolve the issue.

The court concluded that it was too clear to admit of argument that the school district was vested by an express grant from the legislature with the absolute and exclusive power to select, locate and procure by condemnation the site in question unless the Legislature, by enactment of Chapter 89, invested the city with the police power of the state to restrict the selection and location of school sites by its municipal zoning laws enacted pursuant to the authority of the power conferred upon it by Chapter 89.

In reaching this conclusion, the court relied on the eminent domain test to some extent at least, when it pointed out that the power of eminent domain is inherent in sovereignty and exists in a sovereign state without necessity of mention, *State ex rel. St. Louis Union Trust Co. v. Ferriss,* supra, at 898; that it is superior to property rights, and that the right to exercise it is exclusively a legislative prerogative, subject only to such limitations as are fixed by the constitution itself. In this state the only constitutional limitation placed upon the Legislature in the exercise of this power is that imposed by Article I, Sec. 26, that private property may not be taken or damaged for public use without just compensation.

The court then turned to a consideration of the impact of Chapter 89, Section 89.020 on the right of the school district to locate the school facilities in an area from which it was barred by the zoning laws of the municipality. Quoting from *State ex rel. Helsel v. Board of County Commissioners of Cuyahoga County,* 79 N.E.2d 698, 704 (Ohio Com.Pl.1947), the court said: "To suppose that zoning ordinances may limit or prevent the public use for which land is taken is to invest municipalities with power to restrict the exercise of the power of eminent domain . . . Zoning ordinances are upheld on the theory that they bear a real and substantial relation to the public welfare. Their validity rests upon the principle that the exercise of rights to the ownership of

private property may be restricted in the interest of the general welfare of the inhabitants of the municipality. Through the medium of zoning ordinances municipalities may insist that private rights in real property yield to the general good of the community, but the presumption is that the use of public property for public purposes is designed to promote the general welfare also, and no case or textual authority has been cited, that supports the view that municipalities by zoning ordinances may restrict or limit the use of *public property for public purposes.*" (Original emphasis) 304 S.W.2d 900–901.

In distinguishing cases cited by the city on the grounds that they involved proprietary functions, the court pointed out that "[t]he selection, location, procurement of a site through condemnation and operation of a public school is a governmental and not a proprietary function." 304 S.W.2d 902.

The next case, *State ex rel. Askew v. Kopp,* supra, decided the question whether a local regulation—a county zoning ordinance restricting the location of sewage disposal plants in an agriculturally zoned district of Jackson County—enacted under the police power granted to the county court could be applied to the activities of a fourth class city outside its corporate limits under the police power granted the board of aldermen to secure the general health of the city. The city, pursuant to the authority of two statutes, §§ 79.380 and 71.680, RSMo. 1949, granting the power to the board of aldermen of fourth class cities to acquire by purchase or condemnation lands within or without the city limits for the purpose of sewer carriage and outfall[4] and purification plants or sewage disposal plants, entered into option contracts to buy land needed for construction of a sewage treatment plant two and one-half miles from the city limits in Jackson County. Subsequently, the city filed with the Board of Adjustment of Jackson County an application for authorization to use the land for

4. Section 79.380 restricted exercise of this power to lands within five miles of the city limits; § 71.680 contained no restriction of this kind.

a sewage disposal plant and the Board, after public hearings, granted the authorization sought. Mrs. Askew filed a petition for writ of certiorari for a review of the decision and the circuit court affirmed the order of the Board of Adjustment.

In holding that the city was not subject to the zoning regulations of Jackson County the court said: "Local zoning ordinances are not applicable to public uses of property for which an agency of the government has the power to acquire lands by the exercise of the power of eminent domain." 330 S.W.2d 888. *State ex rel. St. Louis Union Trust Co. v. Ferriss,* supra, was cited as authority for the principle that under the rule of ejusdem generis the authority to regulate and restrict the location and use of buildings and lands for "trade, industry, residence or other purposes" related to private property and the phrase "other purposes" was not to be broadened to include a public use of property by the state in carrying out its constitutional mandate to establish and maintain free public schools.

Askew has been cited as "the leading case favoring the adoption of this (Power of Eminent Domain) test." *City of Temple Terrace v. Hillsborough Assoc. for Retarded Citizens, Inc.,* 322 So.2d 571, 578 (Fla.App. 1975).

The next case to consider this question was *St. Louis County v. City of Manchester,* 360 S.W.2d 638 (Mo.banc 1962). It was a proceeding instituted by St. Louis County, a Constitutional Home Rule Charter County, to enjoin a fourth class city within said county from constructing and operating a sewage treatment plant and related facilities outside its city limits in a district designated as residential under the zoning laws and building regulations enacted by the county pursuant to its Charter. In holding that the county's zoning ordinances were a lawful restriction upon the location of the sewage disposal plant and related facilities which the fourth class city within the coun-

ty proposed to construct outside its city limits and in the county, the court distinguished both *Ferriss* and *Askew.*

In distinguishing *Ferriss* the court said: "the decision in the *Ferriss* case did not turn solely upon the existence of the right of condemnation because the statutes expressly provided that the board of education should select and locate sites for schoolhouses, which sites could be acquired by condemnation. The statutes upon which the City of Manchester relies do not expressly bestow upon it the right to select the precise location of a sewage disposal plant. The grant is general; it may be within or without the city limits. Furthermore, the nature of schools and the duties of school board members are such as justify vesting in them the right to locate schools where the school population and the public interest will best be served." 360 S.W.2d 640.

In distinguishing *Askew,* the court said: "In the *Kopp* case there was no controversy between the City of Raytown and Jackson County. Raytown had sought and obtained the approval of Jackson County for the location of sewage lagoons and oxidation basins. The objectors were landowners who lived in the vicinity. A footnote to the opinion at 330 S.W.2d 887 points out that Jackson County does not operate under a special charter authorized by Sec. 18(c), Art. VI of the Constitution which specifically confers upon charter counties planning and zoning powers. This and the circumstances under which the litigation arose renders the *Kopp* case not controlling in this case." [5] 360 S.W.2d 641.

While the court in *Manchester* recognized that ordinarily the grantee of the power of eminent domain may determine the location of the facility or improvement and the land to be taken for it, it also noted that the power of selecting a location may be restricted by a statute or an ordinance having

5. The statement by the court that there was no controversy in this case between the City of Raytown and Jackson County is, in our opinion, somewhat misleading because Raytown sought and was granted leave to intervene in the certiorari proceeding in the circuit court, presented evidence, and, on appeal, for the first time challenged the jurisdiction of the Jackson County Board of Adjustment over the subject matter.

the force and effect of a statutory provision; that the grant of municipal powers to charter counties under Sec. 18 of Art. VI is meaningful and vests rights which cannot be taken away or impaired by the general assembly, and one of these rights is to exercise legislative power pertaining to planning and zoning in the part of the county outside of incorporated cities. No statutory authority expressly conferring on the city a superior right to locate the facility regardless of the zoning ordinances of St. Louis County was called to the attention of the court; by ruling that the zoning ordinances of St. Louis County were a lawful restriction upon the location of the sewage disposal plant and related facilities the city proposed to construct, "effect is given to the constitutional provisions, the statutes, and the ordinances of St. Louis County in their respective fields and in proper proportion." 360 S.W.2d 642. The decision was based upon a holding that "the public interest is best served in requiring . . . (the selection of the location of the sewage disposal facilities) to be done in accordance with the zoning laws." Id.

In *Manchester* the court specifically said it was not applying the "Superior Sovereign Test" in reaching its decision. 360 S.W.2d 642.

Although *Ferriss* was distinguished as we have developed, supra, no reference was made to the holding in that case that the power conferred by Ch. 89 on cities is restricted to the regulation of private property and has no application to the use of public property for public purposes; nor that § 64.090, subd. 1, conferring the power to zone upon counties of the first class extended to the regulation of the height, number of stories, and size of buildings, the percentage of lots that may be occupied, the size of yards, courts and other open spaces, the density of population, the location and use of buildings, structures and land for "trade, industry, residence or other purposes, including areas for agriculture, forestry and recreation," did not apply to public uses of property for which an agency of the government has the power to acquire lands by the exercise of the power of eminent domain in *Askew*. It did not specifically overrule these cases but distinguished them.

The next case to come before the Supreme Court was *Appelbaum v. St. Louis County*, 451 S.W.2d 107 (Mo.1970). The county sought to construct an incinerator on a tract of land situated partly in the Village of St. John and partly in the Village of Bel-Ridge. That portion of the tract of land in the Village of St. John was zoned residential, and that in the Village of Bel-Ridge, light industrial. The question before the court relevant to this decision was whether the proposed use of the tract of land was subject to the zoning powers of St. John and Bel-Ridge. The Supreme Court held it was not.

In arriving at its decision the court pointed out that the source of St. Louis County's authority to acquire land upon which to construct an incinerator, and to construct an incinerator, was Article VI, Sections 18–20, Missouri Constitution, which authorized a special charter for its government and to provide for, among other things, the vesting of legislative power pertaining to public health, and the terms upon which it might perform any of the services and functions of any municipality or other political subdivision except school districts. Reference was made to § 49.303 V.A.M.S., whereby the county council of a first class county having a constitutional charter was empowered to construct and operate incinerators and to acquire property for said purposes by eminent domain and to § 64.320 V.A.M.S. authorizing first class counties to acquire land by eminent domain upon which to operate land-fills and parks, without any restrictions on the exercise of said powers in the unincorporated areas of the county. The fact that the county had adopted a Home Rule Charter containing a provision for the exercise of public health legislative power and to provide the terms upon which the county could perform any service of a municipal or political subdivision except a school district was also noted. It stated that the county might also exercise power pertaining to public health conferred by the

state upon counties of the first class, all of which are authorized to enact ordinances tending to enhance the health of all residents of St. Louis County irrespective of whether they also reside within a municipality. *Ferriss* was considered analogous to the situation in *Appelbaum*; the proposition that a city had no power to prohibit by its zoning laws the exercise of the constitutional and statutory authority of a school district to locate and construct a school was the basis for its decision that the location of the incinerator by the county could not be prohibited by the zoning ordinances of the two Villages.

The court also distinguished *Manchester* (which was relied upon by the appellants) on the grounds that its facts were distinguishable, and distinguished *Askew* because in *Askew* it was Jackson County whose authority was under attack and Jackson County did not operate under a special charter pursuant to Article VI, Section 18(c), Missouri Constitution, and there was no controversy between the municipality and the county.[6]

The last case we have found to have come before the appellate courts of this state involving this question is *State ex rel. City of Gower v. Gee*, 573 S.W.2d 107 (Mo.App. 1978). There, a municipality of the fourth class, the City of Gower in Clinton County, sought to construct a sewage disposal facility outside its city limits in Buchanan County, pursuant to § 71.680 which authorized a city of the fourth class to acquire by purchase or otherwise, incinerator plants within or without its city limits and pursuant to § 79.380 which authorized cities of the fourth class to purchase or condemn necessary lands within or without its city limits, or within five miles therefrom, for sewer carriage and outfall. However, Buchanan County, pursuant to Ch. 64, "County Planning, Zoning and Recreation," had zoned the property for agricultural use. Gower applied to the Buchanan County Board of Zoning Adjustment for an exception to the zoning and, after hearing, its application

was rejected. Gower petitioned the circuit court for a Writ of Certiorari and the writ was granted; the trial court declared all proceedings before the Board to be coram non judice and void for want of jurisdiction under the applicable law, reversed the Board's order rejecting Gower's application, and remanded the cause to the Board with directions to dismiss the proceedings. The Board appealed.

The Western District of this court affirmed the action of the trial court.

In doing so, the court found that the source of Gower's power to construct a sewage disposal facility was Article IV, Section 37 of the Constitution of Missouri, wherein it is provided that the health and general welfare of the people are matters of primary public concern, and to secure them the general assembly might grant power with respect thereto to counties, cities or other political subdivisions of the state. That, pursuant to this constitutional authority the legislature, by enacting §§ 71.680 and 79.380, had delegated to Gower the power to exercise the state's sovereign right to acquire property by condemnation or purchase for the purposes enumerated under § 71.680 and within the limits of § 79.380. It further declared that no constitutional provision limits this power, except that private property may not be taken without just compensation. Art. I, § 26.

In deciding the question, the court relied on *Ferriss* for the legal position that the exclusive constitutional and statutory powers vested in the city could not be limited or restricted by the county zoning ordinance. It also relied on *Askew,* and particularly on that portion of the opinion which stated that there was no constitutional provision such as Article IV, § 37, which could apply to the zoning power. 573 S.W.2d 110. The court also held *Manchester* and *Appelbaum* distinguishable and not authoritative on the grounds that they involved a first class charter county which is not subject to restriction of its powers by the municipalities within said county. 573 S.W.2d 111.

6. See fn. 5, where we question the validity of an alleged lack of controversy between the City of Raytown and Jackson County as a basis for distinction.

■ The *common thread which runs* through each of these cases appears to be the holding that where a power has its source in the Constitution, although delegated by the state legislature to a municipality or other state agency, it takes precedence over and cannot be restricted by a power, such as zoning, which is delegated to a competing municipality or governmental agency without any constitutional source.

In *Ferriss* the constitutional source of the school district's power to acquire sites for school facilities was Article IX, § 1(a), and the implementing legislation, § 165.100 specifically authorizing the school district to "locate sites for schoolhouses." In the sewage disposal cases where the zoning was held to restrict the power of the governmental agency to locate the facility in a host county, the constitutional source of the power to construct such facilities was Article IV, § 37, and the power to enact zoning legislation had its source in Article VI, § 18(c) of the Constitution. Where the zoning power was not permitted to prevail, there was no provision of the constitutional authority for the county to enact zoning ordinances, but the power to zone was delegated to the county by the General Assembly and contained no provision prohibiting the exercise of the specific constitutional and legislative power granted the municipality to acquire by condemnation or purchase property for the governmental purpose.

■ In these cases, where adverse claims of two governmental units are presented, each claiming to have the superior right and power to designate the location of a facility, the court must construe the constitutional and legislative provisions together and harmonize them if it is reasonably possible to do so.

■ We believe the legislative grant of authority to cities to acquire by purchase or condemnation land for the use of parks has its source in Article I, § 26 of the Constitution of Missouri and the state's concern for the health and general welfare of the citizens of this state. To implement this constitutional authority conferred on the state government the General Assembly delegated to the cities of the state in § 90.010 the power to acquire land for these purposes by condemnation within its city limits or within one mile thereof. Unlike a sewage disposal facility or an incinerator, the operation of which, experience has shown, may be highly offensive, *St. Louis Co. v. City of Manchester*, 360 S.W.2d 642 (Mo.banc 1962), the operation of a park within a zoned area is less likely to be offensive. No specific provision appears in § 90.010 indicative of any intention on the part of the General Assembly that the exercise of the power to acquire land for parks outside, but within one mile of the the city limits, should be subject to zoning regulations of any host county or municipality restricting the use of the land which would result in prohibiting its use for park purposes. On the other hand, Ch. 89 which is the source of Sunset Hills' power to regulate the use of land within its territorial limits does not provide that land used by state agencies shall be subject to zoning ordinances enacted pursuant to the authority of Ch. 89. In such cases our Supreme Court has said, *State ex rel. Askew v. Kopp*, 330 S.W.2d 882, 888[7]: "The state and its agencies are not within the purview of a statute unless an intention to include them is clearly manifest, especially where prerogatives, rights, titles or interests of the state would be divested or diminished." [7]

7. Municipal zoning ordinances have been held not to prohibit acts of various governmental and nongovernmental bodies; conflicts have arisen with respect to the location and operation of churches, aboveground construction of utility lines by a public utility, and the sale of fireworks in violation of a fire protection district ordinance. See: *Congregation Temple Israel v. City of Creve Coeur*, 320 S.W.2d 451 (Mo.1959) (A municipal ordinance precluding construction of any church in the city unless a special permit was issued by the Board of Aldermen was held invalid, because to construe the language of the enabling act to include authority to restrict or prohibit the use of land for religious purposes would invite interference with the free exercise of religion guaranteed by the First and Fourteenth Amendments of the United States Constitution); *Union Electric Co. v. City of Crestwood*, 499 S.W.2d 480 (Mo.

While we would be inclined to apply the balancing of interests to this case, so far as we have been able to ascertain that test has not been employed in this state in resolving conflicts of this sort, and the parties to this appeal have not requested that we do so. They have presented the issue to us on the sole grounds that the zoning ordinance is invalid because it conflicts with the delegation of the state's power to acquire land by condemnation for the purpose of using it for park purposes. In this posture, we hold that the power of Kirkwood to exercise the authority delegated to it by § 90.010 to acquire the tract in question and to use it for the purpose of a public swimming pool and recreational facility cannot be abrogated by Ordinance No. 622 of the City of Sunset Hills, and that the judgment of the trial court, if it held otherwise, was in error.

Turning now to the appeal from the injunction case, we also reverse that judgment.

It is clear that the trial court felt constrained by the judgment in the declaratory judgment action which at that time had not been appealed and which was construed to have decided that Ordinance No. 622 was a valid exercise of Sunset Hills' zoning powers. Our holding supra has removed the res adjudicata question, and our holding that the ordinance cannot prohibit Kirkwood from operating the swimming pool and recreational facility in the City of Sunset Hills' territory, requires a reversal of the judgment in the injunction action.

We choose not, however, to remand these cases to the Circuit Court from whence they came; rather, pursuant to the authority of Rule 84.14, we shall enter the order the trial court should have entered in each cause.

We hold that the City of Kirkwood may proceed with the operation of a public swimming pool and public recreational facility on the tract of land identified in the record in Exhibit A to its petition and occupied by the Fountainbleau Bath and Tennis Club, and that Ordinance No. 622 of the City of Sunset Hills may not be employed by the officials of said City to prohibit the operation of a public swimming pool and public recreational facility by the City of Kirkwood. We also dissolve the injunction restraining the City of Kirkwood from creating, maintaining or operating a public recreational facility or public swimming pool on the property heretofore entered in Cause No. 408332 of the Circuit Court of St. Louis County.

In so ruling, we do not imply that the operation of these facilities by the City of Kirkwood within the city limits of the City of Sunset Hills may not be subject to the exercise of some valid police regulations of Sunset Hills. See *Smith v. Board of Education of the City of St. Louis*, 359 Mo. 264, 221 S.W.2d 203 (banc 1949).

The judgments of the trial courts are reversed and judgment entered as aforesaid.

STEPHAN, P. J., and STEWART, J., concur.

---

1973) and *Union Electric Co. v. City of Crestwood*, 562 S.W.2d 344 (Mo.banc 1978) (A municipal ordinance prohibiting aboveground construction of utility lines invaded the area of regulation and control of public utilities vested in the Public Service Commission); *State ex rel. Burnau v. Valley Park Fire Protection Dist.*, 477 S.W.2d 734 (Mo.App.1972) (An ordinance of the Valley Park Fire Protection District which attempted to prohibit the sale of all fireworks was in direct conflict with a state statute expressly authorizing the sale of fireworks, and the ordinance, therefore, was void.)